M. EUGENIA ALLEN and others, Infants, *v.* W. H. SHIELDS, Administrator, and others.

The Homestead law applies to debts contracted prior to its adoption; and by Sec. 3, Art. X. of the Constitution, the right to a Homestead is given to the minor children of an insolvent father, regardless of their pecuniary circumstances.

Whether since the Act of 1871–'72, chap. 95, (Battle's Revisal, chap 17, sec. 59,) a valid sale of an infant's land can be made without a personal summons,—*Quere?*

When an administrator sells land by an order of Court to pay the debts of his intestate, he must lay off a Homestead for the parties entitled thereto. His failure to do so does not effect their right to such Homestead.

(The case of *Hill* v. *Kesler*, 63 N. C. Rep. 437, cited and approved.)

PETITION for a homestead by infants, to a Justice of the Peace, and carried by appeal to *Watts, J.*, before whom it was heard at Chambers in HALIFAX county, on the 4th day of August, 1874.

The facts are agreed and are fully set out in the opinion of the Court. His Honor, on the hearing before him, granted the prayer of the petitioners, whereupon the defendants appealed.

*Moore & Gatling* and *Hill*, for appellants.
*Conigland,* contra.

RODMAN, J. The plaintiffs are the minor children of James V. Allen, who died intestate and insolvent, seized of certain

lands, in November, 1871. They claim a homestead in their father's lands in the county of Halifax. Their claim is disputed by the defendant Shields, who is the administrator of the deceased, and by the two other defendants, Gregory and Manly, who are the creditors of the deceased, and who also severally purchased portions of his land as hereinafter stated.

The grounds of their defence are these:

1. That the debts of the deceased to said Gregory and Manly, respectively, were contracted before the adoption of the present Constitution in 1868. That Daniel & Gregory recovered a judgment against the deceased, which was docketed in Halifax in 1870.

2. That the plaintiffs inherited from their mother, who died before their father, and owned at his decease lands worth about $3,000.

3. That in 1873 the administrator brought a special proceeding for the sale of the lands of his intestate, for the purpose of paying his debts; to which the present plaintiffs were duly made parties defendant, by service on their guardian, one Martha Clark, who failed to appear, whereupon the Court appointed a guardian *ad litem*, who appeared and admitted the allegations of the complaint. It does not appear that there was ever any personal service on the infants. Nevertheless, the Court ordered the sale of the lands, and they were accordingly sold in January, 1874, when Gregory purchased one tract, and Manly another, but no deeds have yet been made to them, and it does not appear that the sales have been confirmed. The Justice before whom the petition for the homestead was originally heard, decided in favor of it, as did the Judge of the Superior Court, when it was brought before him upon appeal.

1. The first objection is conclusively answered by the case of *Hill* v. *Kesler*, 63 N. C., 437, to which it is only necessary to refer.

2. Art. X, sec. 3, of the Constitution, says: " The homestead after the death of the owner thereof, shall be exempt from

the payment of any debt, during the minority of his children, or any one of them."

There is no *proviso* that it shall not be exempt if the children otherwise own homesteads, as there is in the case of a widow, by section 3. The Constitution taken literally gives the right to a homestead to all the minor children of an insolvent father, without inquiry into their circumstances, and there is no reason why we should curtail it. We consider it of no importance whether or not there was a habitable or comfortable dwelling on the lands of which the plaintiffs were seized by descent from their mother. The homestead must include the dwelling of the owner thereof, if there be one, but a homestead may be had of unimproved land. Otherwise the poorest and most needy class of all, viz: those who have small bits of land which have no buildings of any sort on them, would be excluded from the benefit of the act.

Homestead is analagous to dower. A doweress is entitled to the mansion as a part of her dower. But if the husband dwelt in a house in which he had only a term for years, or a life estate, she is nevertheless entitled to dower out of all the lands he was seized of, whether they were improved or not.

3. The third objection turns upon the point that the plaintiffs have lost their right, through the fraudulent or negligent failure of their regular guardian, or of their guardian *ad litem*, to claim it in apt time. If we were compelled so to hold, it would illustrate the value of the safe-guards which were thrown around infants, by section 59 of C. C. P. This section seemed to some of the profession, to put on them a needless labor, and to interpose a needless delay in subjecting the estates of infants to sale. Probably under this idea, the Legislature repealed the section by the Act of 1871–'72, chap. 95, (Battle's Revisal, chapter 17, section 59.) We think there is no member of the bar, who does not know from his own observation in the course of his practice, how dangerous it is to leave the rights of infant defendants to be protected by a guardian appointed *ad litem*, upon the suggestion of the adverse party,

and without any personal service of the summons on the infant. Too often such an appointment is, to use the language of an old lawyer quoted by Blackstone, " *Committere agnum lupo.*"

We should be reluctant to hold that the Act of 1871–'72 re-introduced and legalized a practice which to some extent prevailed in some of the old County Courts, by which personal service on an infant of whatever age was dispensed with, and on the filing of a petition to sell his land for partition, or for any other purpose, the Clerk of the Court was appointed a guardian *ad litem* to bind the infant by his answer. Such an appointment was of course merely formal; the Clerk put in any answer that was prepared for him; it was merely a part of a judicial ceremony, by which the infant was deprived of his estate. I am informed that Judge RUFFIN once, after he had ceased to be chief Justice of this Court, and had become a Justice of the County Court of Alamance, indignantly protested against this practice when he found it existing in that Court, as mischievous and illegal. Personal service was indispensable by the common law: it was a check upon fraud which cannot be safely removed; and it may be doubted whether a valid sale of an infant's land can be made without it, even since the Act of 1871–'72.

It is unnecessary however to decide this point, for we think that notwithstanding the neglect of the guardian to set up the rights of the infants to a homestead in defence to the action by the administrator to sell the lands, that their rights in that respect have not been lost.

It is true that the law makes no provision that an administrator before selling lands to pay the debts of the intestate, shall have the homestead of the infant heirs laid off, as it does in the case of a sheriff who levies upon land under an execution. (Battle's Revisal, chap. 55, sec. 1.)

It would seem from the analogy of the case of an administrator to that of a sheriff, that he should do so. But if he neglects the duty, his sale like that of a sheriff under an execution,

must be only of such estate of the debtor as may lawfully be sold. The purchaser must inquire into all adverse equities affecting the estate, and in like manner into the rights of the children or widow to a homestead.

There was no error in the judgment below.

Judgment affirmed, and case remanded to be proceeded in, &c.

PER CURIAM.                                    Judgment affirmed.