WILLIAM RIGGS v. SALLIE M. STERLING.

*Homestead—Selection of—Sale of on execution—Law governing fully considered—Price brought at execution sale not conclusive evidence of value—Proof of value of—Limitation of number of witnesses to six, not an abuse of discretion—Statements of counsel to jury.*

| 60 | 643 |
|----|-----|
| 64 | 328 |
| 60 | 643 |
| 68 | 610 |
| 60 | 643 |
| 98 | 81 |
| 60 | 643 |
| 119 | 463 |
| 60 | 643 |
| 123 | 607 |
| 60 | 643 |
| 126 | 615 |
| 126 | 616 |
| 60 | 643 |
| 152 | ³384 |

1. The creditor's *right* to a satisfaction of his debt by a sale of the debtor's land never existed in this country or in England, except as given by statute law.

.2. The homestead exemption in this and other states is not in derogation of the common law, but rather the limitation and exclusion of such exemption; and the rule requiring strict construction has no application to these statutes, as against the debtor, or to the constitutional provision securing to him a homestead.

3. The homestead exemption, as established by the constitution and laws of Michigan, is not alone for the husband and his protection, but for the benefit of the wife and children as well. It is not a privilege, but an *absolute* right, and was intended to secure against creditors a home, and, to a certain extent, the means of support, to every family in the State.

.4. Where land claimed as a homestead is within the constitutional limit as to quantity, and is occupied by the owner, such *occupancy* is evidence of an election by such owner of the parcel so occupied, and is a sufficient notice to all of its homestead character, and of his selection and the extent thereof, to enable him to enjoy the fullest protection of the law, which forbids its sale on execution unless its value exceeds fifteen hundred dollars; in which event the creditor, if unable to obtain the debtor's consent to a division, may apply to the equity court to secure the same.

5. When a debtor has selected his homestead (see note 4), and it is within the constitutional limitation as to quantity, excess of value will not necessitate any other action on his part in case of a levy thereon until the appraisal provided for by How. Stat. § 7728, is made; and in the absence of such appraisal, or a division had under the order or decree of a court of equity, no valid sale of the homestead so selected, or any part thereof, can be made by the sheriff under such levy.

6. A homestead once established can never be waived except by abandonment, or alienated except by deed of some kind; but prior to an election and selection by the owner (see note 4) it may be waived by failure to make such election and selection before sale by the sheriff.

7. No waiver of the homestead right by the husband can affect the wife's interest therein; nor can such waiver, or an abandonment thereof by one entitled to its enjoyment, affect the interest of any other person equally entitled thereto.

8. A wife waives nothing by taking a deed from her husband of their homestead without consideration, and such conveyance cannot be considered in fraud of his creditors.

9. The price brought by a homestead on execution sale is not conclusive proof of its value.

10. Where in an action of ejectment brought on an execution sale of a homestead the only question to be determined by the jury was its value, it was not an abuse of discretion on the part of the court to limit the number of witnesses on each side to six.

Error to Wayne. (Chambers, J.) Argued February 19, 1886. Decided April 15, 1886.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*S. E. Engle*, for appellant.

*Sawyer & Knowlton*, for defendant.

[This case was twice argued before the Court upon original and supplemental briefs, and, as the opinion of the Court covers the whole range of the discussion and contains full citations of authorities, an abstract of the briefs of counsel is omitted.—REPORTER.]

SHERWOOD, J. The action in this case is ejectment, to recover the possession of less than forty acres of land situate

in the county of Wayne, and not included in any town plat, city, or village. It was purchased by William Sterling, the husband of the defendant, in 1874, and was used and occupied by them as their homestead until the sixth day of March, 1883, when the husband died, and the defendant has made the same her home, continuing the occupancy thereof by herself and tenants up to the time of commencing this suit.

The husband, desiring that his wife should have the property in case of his death, and he being in poor health, on the twenty-seventh day of January, 1880, conveyed the property by warranty deed to the defendant, and the deed was duly recorded on the seventh day of October, 1882.

In January, 1880, and after the making of the deed to the defendant, the plaintiff recovered a judgment against the husband, William Sterling, upon a note several years past due, for about the sum of $213. Execution was taken out upon this judgment, and the sheriff levied the same upon the premises, and subsequently advertised and sold the property to satisfy the execution.

The plaintiff became the purchaser upon the sale, at the sum of $1,720, and paid the money to the sheriff, who satisfied the execution, and holds the remainder of the money, as he claims, for the defendant.

Neither the defendant in the execution, nor the defendant in this suit, had, at the time of the levy, any other real estate or any other homestead, and they were using and occupying the premises as such homestead, and the fact of such occupancy by the defendant and her husband was known to both the plaintiff and the sheriff.

It further appears that neither the plaintiff nor the sheriff ever caused any appraisal of the property to be made. Mrs. Sterling, when informed of the levy, desired an appraisal to be made before the sale. It is under this sale plaintiff claims title.

After the time had expired for the sale to become absolute, the plaintiff instituted proceedings, under subdivision 3 of section 6706 of the Compiled Laws of 1871, to recover

possession of the premises before a circuit court commis-
sioner, and the case was appealed to the circuit court, where
judgment was had for the defendant. The case was removed
to this Court, and the proceedings in the case were set aside
on the ground that, in summary proceedings, the question of
title to real estate cannot be litigated. (*Riggs v. Sterling*, 51
Mich. 157.)

This suit is now brought for the same purpose, the plaint-
iff relying solely upon his title derived under the said exe-
cution sale.

The plea in the case is the general issue, with notice that
the premises were, at the time of the levy and sale, the
defendant's homestead, and did not exceed $1,500 in value.
A trial of the case was had before Judge CHAMBERS, by jury,
and the defendant secured a judgment in her favor. The
case is now before us for review on error.

The facts that the property in question was the home of
the defendant, and that at the time of the levy and sale the
defendant had one child, a minor, living with her, are not
seriously questioned. Nor is it questioned but that the
premises were within the quantity allowed to the defendant
by the constitution for her homestead.

The levy made was for the debt of the husband. The
defendant was neither legally nor equitably liable therefor,
neither could the husband's interest in the premises be made
liable for the debt if the value did not exceed the constitu-
tional limits of a homestead while it was occupied by his
family as such.

The learned counsel for the plaintiff seeks to sustain the
levy and sale, which is made the basis of the plaintiff's title,.
and upon which he relies to maintain this suit, upon the fol-
lowing grounds, viz.:

*First.* That the homestead right is a personal privilege ;.
that it may be taken or not at the option of the person or
persons entitled to it; that the *election* to claim it, and the
*selection* thereof, must be made by the owners or occupants
of the property when it is sought to be subjected to the pay-
ment of their debts, and without such *claim* and *selection,.*

properly notified to the sheriff when he attempts to enforce collection of such indebtedness by levy and sale, the debtor loses the benefit of his privilege to occupy the property, or any part thereof, when its value exceeds $1,500, and that the defendant or husband, having failed to make such *claim* or *selection* in this case, cannot now be heard to make the same against the plaintiff, but must be content to receive the value of the exemption in money, though such value be the amount the plaintiff saw fit to pay for it on the sale made by the sheriff.

*Second.* That by the neglect of the defendant or her husband to make the claim and selection, their homestead right in the premises was waived, and it is immaterial whether the premises contained the exempted quantity fixed by the constitution or not.

*Third.* That the wife, relying upon the deed of the property received from her husband as a protection against the plaintiff's execution, waived and forfeited her homestead right in the premises.

*Fourth.* That the value of the claimed homestead was conclusively established by the amount it brought at the execution sale, and that subject cannot be litigated in this suit; that the amount bid at the sale is conclusive.

*Fifth.* That the execution sale cannot be attacked in this suit, nor the plaintiff's title derived thereunder.

The individual or family home is one of the evidences of modern civilization. It is recognized among the earliest institutions of the common law. A man's dwelling-place, with his interest in the land lying about and contiguous to it, was always inalienable and indefeasible, except when required by the sovereign, or for the defense of the state; neither could the creditor, at the common law, sell *any* of his debtor's land to satisfy his debt; and such continued to be the law for centuries, and for a long time after the restrictions upon alienation had been substantially removed: 3 Bl. Comm. 418.

The first encroachments upon the exclusive right of the debtor to the use of his land were as late as the statute Westm. 2 (13 Edw. I. *c.* 18), and not until the 1 and 2 Vict. *c.* 110, was the creditor permitted to make sale of his debtor's lands to satisfy his debt. The writs of *fieri facias* and *levari facias* only allowed the taking of the goods and profits of

the debtor's land.    The sheriff was not allowed to disturb
the debtor's occupancy or possession of his lands, even under
the writ *elegit*.    The sheriff could not sell the land.    He
could only take possession of half the debtor's land, and could
hold it no longer than the profits would amount to enough
to satisfy the debt : 2 Inst. 395 ; 3 Bl. Comm.  160 ; 1 Roll.
Abr. 885.

It is true that on an *extent* under statutes merchant or
statutes staple the debtor could be deprived of the use of all
his land for his debt, but this could only be done when he
had consented to the judgment (Fitz. Nat. Br. 131 ; 3 Bl.
Comm. 419), or lien under which the possession was taken.
It is only in pursuance of statute law that the right of the
creditor to have his debt satisfied by a sale of his debtor's
land ever existed in this country or in England.

The homestead exemption in our State, and in this coun-
try generally, is therefore not in derogation of the common
law, but it is rather the limitation and exclusion of that
exemption which is not in accordance with the common law.
It therefore follows that the rule requiring strict construc-
tion has no application to these statutes, as against the
debtor, or to the constitutional provision securing the home-
stead to him, and it has no proper place in American juris-
prudence upon the subject; and very few cases hold other-
wise.

In a monarchical government, where it is not only policy,
but absolutely necessary, to increase tenancies and dependen-
cies, in order to maintain supremacy in the sovereign and
give stability to the empire, I can readily see why the home-
stead exemption should not be permitted to exist; but in a
government like ours, where a tenantry is unfavorable to
freedom and the independence of the people, where the
ownership of the freehold is essential to the highest develop-
ment of the citizen, secures the purest patriotism, and gives
the best assurance of free government, its necessity and im-
portance cannot be well overestimated.

It has been well said by distinguished jurists in our sister
states " that the homestead exemption was founded upon

principles of the soundest policy,—those looking to the general welfare, as well as to that of the individual citizen;, and the obvious intent of the act is to secure to every householder or head of a family a home,—a place of residence,—which he may improve and make comfortable, and where the family may be sheltered and live beyond the reach of those financial misfortunes which even the most prudent and sagacious cannot avoid:" *Franklin v. Coffee*, 18 Tex. 415; *Wassell v. Tunnah*, 25 Ark. 103.

Indeed, the time has come when the right to homestead exemption in a reasonable amount ought to be regarded as appertaining to every citizen, in every country existing under a republican form of government; and what seems most singular to the student who examines this subject at this late day is that in this country the imperious demands of business, and the avarice and greed of wealth, should, for so long a period, have been allowed to so far control the legislation of the country as to completely obliterate the last vestige of the wise and humane provisions of the common law, and place, not only the home, but the homestead of every husband and family at the tender mercy of selfish, uncompromising, and, it may be, unpatriotic creditors.

It is not strange that courts whose duty it is to listen to the grievances of both debtor and creditor alike, and do justice to each, should not have failed to improve the first opportunity to look upon and construe with favor, liberally, in accordance with the equity and spirit of the law, the statutes and constitutional provisions by which the homes and homestead exemption are again restored to the citizen, after so many years of deprivation and destitution have been endured by the unfortunate in every community. Such has always been the construction given to these provisions of our constitution and laws upon the subject, and I trust a less liberal and humane view will never be taken by this Court: *People v. Plumsted*, 2 Mich. 465; *Beecher v. Baldy*, 7 Mich. 488; *Barber v. Rorabeck*, 36 Mich. 399; *Bunker v. Paquette*, 37 Mich. 79; *Lozo v. Sutherland*, 38 Mich. 168; *Richardson v. Buswell*, 10 Metc. 507; *Montague v. Rich-*

*ardson*, 24 Conn. 338; *Springer v. Lewis*, 22 Penn. St. 191; *Robinson v. Wiley*, 15 N. Y. 489; *Frost v. Shaw*, 3 Ohio St. 270; *Favers v. Glass*, 22 Ala. 621; *Wade v. Jones*, 20 Mo. 75; *Ferguson v. Miners' Bank*, 3 Sneed, 630; *Wilson v. Oldham*, 12 B. Mon. 57.

The homestead exemption, as established by the constitution and laws of this State, is not alone for the husband, and his protection, but for the benefit of the wife and children as well: Const. art. 16, §§ 2, 3, 4; How. Stat. c. 267; *People v. Plumsted*, 2 Mich. 471; *Beecher v. Baldy*, 7 Mich. 488; *Dye v. Mann*, 10 Mich. 297; *King v. Moore*, Id. 538; *Snyder v. People*, 26 Mich. 110; *Comstock v. Comstock*, 27 Mich. 97; *Showers v. Robinson*, 43 Mich. 502; *Sherrid v. Southwick*, 43 Mich. 515; *Penniman v. Perce*, 9 Mich. 509; *Dyson v. Sheley*, 11 Mich. 527.

The homestead exemption, as it now exists, is not only a privilege conferred (*Chamberlain v. Lyell*, 3 Mich. 458), but, under the constitution, it is an absolute right. "It was intended to secure against creditors a home, and, to a certain extent, the means of support, to every family in the State:" *Dye v. Mann*, 10 Mich. 297; *McKee v. Wilcox*, 11 Mich. 358.

The homestead right exists in favor of the poor and the rich alike. It is for the support of the one, and security against want and destitution for the other; and when the homestead claimed to be protected is within the quantity limited by the constitution, and occupied by the owner, such occupancy is itself evidence of an election by the owner of the parcel occupied, and a notice to all of its true character as a homestead, and of his selection, and the extent thereof, and no other or further notice is necessary to be given to enjoy the fullest protection of the law: *Beecher v. Baldy*, 7 Mich. 488; *Thomas v. Dodge*, 8 Mich. 51.

When such homestead, in amount within the constitutional limit, is once established by such election, selection, and occupancy, the constitution is a positive prohibition against levy and sale by the owner's creditors, unless it exceeds $1,500

in value: *Beecher v. Baldy, supra; Drake v. Kinsell*, 38 Mich. 232.

If the creditor, however, thinks the homestead thus selected by the debtor exceeds in value the sum of $1,500, and it is capable of division so as to leave the debtor a homestead worth that amount, he may then apply to a court of equity, and have the division made if he cannot obtain the consent of the debtor to a division. See *Beecher v. Baldy, supra.*

If, however, in such case, or in any other case, the homestead is incapable of division, then the sheriff may proceed, under the statute, and under proper notice to the defendant, and under proper proceedings taken, have the homestead appraised, and if found incapable of division, and the value exceeds $1,500, the whole property may be sold unless the debtor shall pay the judgment, and in case of sale $1,500 shall be reserved for the debtor, and which, with any excess after satisfying the execution, shall be paid over to him: How. Stat. § 7728.

From the foregoing it will be seen in no case where the debtor occupies the homestead, and it is within the constitutional limit, and is capable of division, whatever may be its value, is he required to take any steps to preserve or protect his homestead against the invasion of the creditor under his levy and sale on his execution, before he seeks, by suit in the circuit court, to have division made, or to obtain possession after levy and sale, as in this case. See How. Stat. *c.* 267.

It will be further noticed by an examination of the provisions of the constitution and statute, and the decisions herein cited, that the defendant in the execution is only bound to take the initiative in preserving and protecting his homestead right after levy, when the parcel of land occupied exceeds in quantity the legal limit, and no election or selection of the homestead has been made by the debtor; that when the selection has been made, and it is within such limit as to quantity, excess of value will not make any other action on the part of the debtor necessary until after the appraisal is made; and without such appraisal made, or a division had under the order or decree of a court of equity,

no valid sale of the homestead, or any part thereof so selected by the debtor, can be made by the sheriff.

The homestead, once established, can never be waived except by abandonment, or alienated except by deed of some kind : *Showers v. Robinson*, 43 Mich. 512 ; *Wallace v. Harris*, 32 Mich. 380 ; *Amphlett v. Hibbard*, 29 Mich. 298.

The homestead right, however, before the owner has made his election and selection in the manner hereinbefore set forth, may, all parties interested therein having knowledge of the facts, be waived by failing to make such election and selection before sale by the sheriff : *Beecher v. Baldy*, 7 Mich. 505 ; *Stevenson v. Jackson*, 40 Mich. 702; *Lamore v. Frisbie*, 42 Mich. 189; *Matson v. Melchor*, 42 Mich. 477 ; or the homestead may itself be entirely lost by abandonment by all the parties (if no minors) interested therein or to be affected thereby : *Wisner v. Farnham*, 2 Mich. 472 ; *Phillips v. Stauch*. 20 Mich. 369.; *Bunker v. Paquette*, 37 Mich. 79 ; *Bissell v. Taylor*, 41 Mich. 702 ; *Dei v. Habel*, 41 Mich. 88.

No waiver of the homestead right by the husband can affect a wife's interest therein : *Beecher v. Baldy*, 7 Mich. 506 ; *Williams v. Starr*, 5 Wis. 534 ; *Ring v. Burt*, 17 Mich. 465 ; *First Nat. Bank Constantine v. Jacobs*, 50 Mich. 340 ; neither can the abandonment or waiver of the homestead right or homestead by one entitled to enjoy the same affect the interest of any other equally entitled thereto : *Showers v. Robinson*, 43 Mich. 513 ; *Griffin v. Johnson*, 37 Mich. 87, 92 ; *Allen v. Shields*, 72 N. C. 504.

The defendant, in taking her deed of the fee of this homestead, without consideration, of her husband, did not affect her homestead right. It cannot be considered in fraud of creditors : *Smith v. Rumsey*, 33 Mich. 183 ; *Rhead v. Hounson*, 46 Mich. 244 ; *Pulte v. Geller*, 47 Mich. 560 ; *O' Connor v. Boylan*, 49 Mich. 210. She waived nothing by so doing : *Anderson v. Odell*, 51 Mich. 492 ; *Savings Bank v. Elliott*, 53 Mich. 256. The law as above stated has been applied in a great many cases, and has in many instances been found

necessary in this State to secure the benefits intended to our people, under the constitutional and statutory provisions.

We think their necessity is quite apparent in the present case, though the facts are but meagrely presented in the record.

It appears that defendant's husband was living until after the equity of redemption on the sale of her property made by the sheriff had expired, and until after efforts were made by the plaintiff to obtain possession of the premises; that for ten years, at least, this homestead had been the defendant's only property; that the husband had been sick for a number of years; that he was nearly 80 years of age, and so infirm as not to be able to work, and that the defendant, who was well advanced in life, was obliged to carry on the little farm, and do much of the work in the field herself to secure a living for herself and husband; that while thus situated the plaintiff undertook to enforce the collection of his debt out of this homestead, under a levy and sale thereof, and this is thus far his second suit which has reached this Court in his effort to deprive the defendant of her home to satisfy his claim.

Should the contest be waged against her much longer, even though she succeeds in the end, but little will be left to her for future support. Especially must this be so if but an excess of but about $200 could be realized upon the sale of the property, and even that amount was only obtained on the plaintiff's own bid.

This price, obtained at a public sale of the property, is claimed by the plaintiff's counsel to be the best evidence of its actual value. This may or may not be so, according to circumstances. Many times the homestead property might be sold for a sum far exceeding its actual value. For instance, suppose a neighbor adjoining desired the parcel for a building lot to accompany his farm: under such circumstances he might be induced to pay largely in excess of its market or actual value for it. Or, suppose the occupants were troublesome and annoying to the neighbor, and he wished to get rid of them, as is not unfrequently the case; or, take a case where the creditor, to gratify his feelings against his debtor

for not making payment, should see fit to run up the prop-
erty upon the sale to an unreasonable amount,—could it be
truthfully said that the sum obtained under such circum-
stances would represent the actual or market value of the
property, or would be the best or even good evidence of
what it actually was? Would it be the value the framers of
the constitution meant when they said the homestead should
be limited to $1,500? I think not. A sale made under
such circumstances would only be a mode of circumventing
the object intended by the constitution when the provision
was sought to be applied to the precise case which brought
the law into existence. Yet this sale is claimed to be con-
clusive; and that in ejectment for the possession of the
property under it, the defendant cannot be heard to
dispute the value, as indicated by such a sale.

This cannot and should not be the rule. The beneficent
purpose of the law in such case would be entirely defeated,
and the circuit judge did right in overruling the objection
of plaintiff's counsel to defendant's showing the actual value
of the homestead, upon the trial, at the time the levy was
made.

It was to avoid the consequence of the creditor's taking
the course I have in the cases above supposed, and others
which might be suggested, that the Legislature provided for
a preliminary appraisal of the homestead before sale; also
that the debtor might have the right to redeem from the
execution levy without further expense or proceedings, if
desired, if the appraisal should be regarded as properly made
and just. This is what the defendant asked to have done in
this case.

There is nothing to the suggestion of plaintiff's counsel
that the defendant aided or desired the sale of her property,
or that she desired to cheat the creditors, or that she did
anything which could be construed into a waiver or abandon-
ment of her homestead or homestead right in the property.
We do not think the record tends to show any such thing;
but, on the contrary, that she not only claimed, but has relied
upon, her constitutional rights; and if she was mistaken as

to what they were, that it should be made to appear by a fair application of the rules of law provided for the determination of that question.

The value of this homestead was really the only question to be determined in this case. Six witnesses on each side were allowed to testify upon the subject, and no more. The refusal to allow more to testify on the part of the plaintiff is assigned as error; but we think there was no abuse of discretion on the part of the court in not allowing more cumulative evidence upon this point. Under the circumstances of this case, I can see no reason why a larger number than composed the panel of jurors to try the cause should have been necessary.

The jury, under the charge of the court, which was fair and unexceptionable, found the value of the homestead not to exceed $1,500, and the defendant had judgment accordingly.

There was no ruling in receiving the testimony in the case which was erroneous. Neither do I think anything was allowed to go to the jury in the opening or closing statements of counsel for the defendant which was prejudicial to the plaintiff, or unwarranted by the rules of practice relating to that subject.

A statement of facts by counsel in the opening to the jury, wholly inadmissible under the issue, and a statement of facts admissible under the issue but not proved, made to the jury in closing the case, is one thing; and a statement in the opening, showing the bearing of facts admissible under the issue and expected to be proved, and showing how the issues in the case are to be naturally affected by such facts, and statements made illustrating the relation of the facts one to another, and showing what must be the necessary and final outcome, and the consequences naturally resulting therefrom,—however strong and forcibly presented, and however much they may be calculated to appeal to the feelings, reason, or judgment,—are other and quite different things.

In the first case the statements are highly prejudicial and

improper; in the second, entirely proper, and not unfrequently of much service to the jury in arriving at a correct and satisfactory conclusion. I had occasion to express my views in the case of *Maclean v. Scripps*, 52 Mich. 236, upon this subject, and I have as yet found no good reason to change them.

We do not consider the dower question raised necessarily involved in the case, and are not required to pass upon it now.

I think the judgment should be affirmed.

Morse, J. concurred.

Champlin, J. I concur in what Mr. Justice Sherwood has said relative to the defendant's right to maintain the possession of the land in question as a homestead.

I do not think that where the quantity is within the constitutional limit, but is claimed by the creditor to exceed the value of a constitutional homestead, the creditor can ignore the provisions of the statute, and proceed to a sale, and try the value of the homestead in an action of ejectment.

The statute points out the method of proceeding in such case, and must be followed, or the sale is unauthorized. In this case all the testimony regarding the sale, as well as the value of the property, was, in my opinion, improperly admitted in evidence.

The circuit judge should have directed a verdict for the defendant.

Campbell, C. J. dissenting. The record in this case fails entirely to show that any homestead had ever been selected by Mr. Sterling "by metes and bounds;" and while actual occupancy may indicate, in most cases, that a party will probably desire the privilege of a homestead, there can never be any legal presumption that the land occupied, whether large or small, is all within the value of $1,500. In

the present case the officer certainly had a right to make the levy, and he had no means of knowing, except from the debtor himself or his wife, whether he claimed the whole of it. Where there has been no actual selection by metes and bounds (and this actual selection means some step which is sufficient to inform the officer or the world of the extent of his rights), the statute is express that the debtor must notify the officer of what he regards as his homestead, with a description thereof: Section 7723. Until such notification the officer is not required, neither is the creditor required, to resort to any appraisal: Section 7724.

In the present case no attempt was made to require or induce the sheriff to take any such step, and it is apparent that probably defendant meant to rely on her husband's deed, which may have been good as to the homestead interest, but no further.

The levy was valid, and, not having been put under any conditions, the sheriff had a right to sell, and if the property produced more than $1,500, that must necessarily be regarded as its value. It seems to me entirely inadmissible to defeat a sale, to which no one made opposition at the time, by attempting to show that the land brought more than its value. The way was clear to save defendant's rights, and it was not followed.

I do not feel by any means convinced that the wife, or any third party claiming under a deed, can, under any circumstances, object, in an action of ejectment, to a title made under a sale not objected to when made; or one, even if objected to, that they have taken no steps to have set aside by the court from which the execution issues, if it can be done in any case. It would render it very dangerous for persons bidding to deal in reliance upon the record title, if it can be defeated by parol testimony of a possession which may easily have ceased, and of which, when no steps have been taken before the sheriff to have homestead rights respected before sale, neither original nor derivative purchasers can have knowledge.

The constitution and statutes both contemplate an active selection.   This may, in some cases, be shown by circumstances, but under execution sales I think it must be shown to the sheriff, if not of record already.   There is no hardship in requiring it, and I think the law very plainly requires it.