HIRAM EVANS AND HARRIET EVANS v. THE GRAND RAPIDS, LANSING & DETROIT RAILROAD COMPANY ET AL.

*Injunction—Homestead—Equity pleading—Husband and wife—Contract for right of way.*

1. An averment in a bill of complaint that complainants are living upon 40 acres of land, *which is their homestead*, necessarily implies that the land does not exceed in value $1,500

2. A contract giving a railroad company the right of way over land occupied as a homestead is void, as against such homestead, without the signature of the wife.

3. A railroad company claiming under a contract from a husband for a right of way over his homestead, not signed by the wife, of whose rights it will be presumed to be informed, by entering upon the land early in the morning of the Sabbath day, with a

large force of men, and tearing down a barn upon the premises, without reference to what effect the elements might have upon its contents, makes an aggravated assault upon the rights of the wife, for which there can be no excuse, and courts will not hasten, because of a few technical defects in a bill filed to enjoin such trespass, to uphold such a course of proceeding, or to so rule as to open the way for further violence in that direction.

Appeal from Ionia. (Smith, J.) Argued January 17 and 18, 1888. Decided March 2, 1888.

Appeal from an order granting an *ex parte* injunction, and from an order refusing to dissolve the same. Both orders affirmed. The facts are stated in the opinion.

*Webster & Millard,* for complainants.

*R. A Montgomery* and *Charles B. Lothrop,* for defendants.

MORSE, J. The defendants appeal to this Court from an order of Vernon H. Smith, circuit judge, granting an *ex parte* injunction, and from an order of the same judge denying a motion to vacate the same.

The injunction was obtained on the thirty-first day of October, 1887, upon the complainants' bill, alleging, in substance, as follows: That complainants are the owners in fee of a certain parcel of land in the township of Campbell, Ionia county, describing the same as 40 acres, upon which they have lived, occupying the same as a homestead, for a long space of time; that they now live upon and occupy the same as their homestead; and that their buildings are upon said homestead, including a barn, 100 feet long.

That the defendant railroad company has projected its line of road from Grand Ledge to Grand Rapids; and that said line, as surveyed, passes over and across the homestead lands of complainants, entering at or near the south-east corner thereof, and passing off from the same a short distance from the north-west corner of said premises, running through the barn used by the complainants in storing their

grain and other products, and as a shelter for their animals, and passing, also, within a very short distance of their dwelling-house; that said railroad company has neither purchased the right of way over said homestead, nor entered into any legal agreement to purchase, nor commenced proceedings to condemn, the same.

That said company, and the other defendants, who are contractors and subcontractors of the company, have been constructing the road-bed for said line of railroad, adjoining the homestead lands of complainants, in both directions, but until the thirtieth day of October, 1887, had not entered upon their premises.

That complainants posted notices in conspicuous places upon their premises to the effect that the said railroad company, and all persons acting in its behalf, were forbidden to enter upon the homestead lands, or any part thereof, for the purpose of constructing said road, and also gave like verbal notice to the agents of said company, and to their contractors.

" And your orator and oratrix further show unto the court that said railroad company, and said William McRae, and Michael Lally, and John M. Lally, agent of said firm of McRae & Lally, contractors, and Harry Mitchel, subcontractor and foreman of a crew or gang of workmen and laborers, and also one William Lusk, also some sort of agent for said contractors, in the employ of said contractors, or their agents and servants, unmindful of and not regarding the rights of your orator and oratrix in their said homestead lands, on Sunday, the thirtieth day of October instant, at an early hour in the morning, with a force of workmen, laborers, and servants in their employ, numbering somewhere near fifty persons, with about twenty teams, plows, scrapers, carts, wagons, wheelbarrows, and a great quantity of implements and utensils of all sorts and kinds used and employed by contractors and their workmen and laborers in excavating, filling, and constructing road-beds for the laying of iron for a railroad, entered upon the said homestead lands of your orator and oratrix, and began to plow, dig, and scrape and draw off the earth and soil of your orator and oratrix's said

homestead lands along the surveyed line of said proposed railroad; and entered the barn of your orator and oratrix on their said homestead lands, which is a building nearly 100 feet in length, and turned out all the animals of your orator and oratrix, which had been shut therein during the previous night, and carried out all the grain, hay, straw, and produce, and everything else which your orator and oratrix had stored therein, and put the same where they saw fit, and then tore down your orator and oratrix's said barn, and drew the materials off from the said proposed and surveyed line for right of way on said homestead lands, and deposited the same on said homestead lands outside of said proposed line of right of way; and committed great and serious damage and waste to the said homestead lands of your orator and oratrix by such digging, plowing, and scraping and carting away the said earth and soil along said proposed line of railroad over and across the same as aforesaid."

That complainants, as soon as they discovered this, went out where the defendants were at work, and forbade their entry upon the land, and from interfering with their barn, and digging and plowing up the soil, or from committing any further waste or trespass of any kind; but defendants "hooted and yelled," and wholly disregarded such warning and command.

That complainants are informed and believe that the survey and profile of said railroad line across their said homestead premises requires an excavation of the earth, or cut, from four to six feet in depth for nearly the entire length of said proposed line; and that such excavation or cut will cause irreparable injury and damage to their homestead lands, and nearly, if not quite, ruin the same for the purposes of a homestead; that said cut comes very near to the dwelling-house, and will, besides making a very dangerous place by reason of its proximity to their said dwelling-house, also destroy their said homestead lands, and the dwelling which is their home thereon.

That they are old people, very much advanced in years; that they purchased the said premises 22 years ago for the

purpose of making it their home, and have cleared it up almost from a wilderness, and there lived ever since as their home, and reared their children there, expecting and hoping to remain upon said premises and in said home, during their declining years, to the end of their lives.

That while they are possessed of 80 acres of land in all, 40 acres of which constitutes their said homestead, there is a mortgage of some $1,700 thereon, the interest of which for one year is due and unpaid.

That defendants threaten to go on and continue their waste and damage to said premises until their said proposed line across the same is constructed and completed, without regard to the rights of complainants.

The complainants further charge in their said bill of complaint that the—

"Said defendants sometimes pretend that they have an agreement with your orator for a right of way for the proposed line of their said railroad over and across the homestead lands of your orator and oratrix, and that by reason thereof they have a right to enter upon said homestead lands of your orator and oratrix for the purpose of constructing said road-bed for said proposed line of railroad, and to do and commit the waste, damage, spoil, and injury to the said homestead lands of your orator and oratrix, as hereinbefore mentioned and set forth; whereas your orator and oratrix charge the direct contrary thereof to be the truth, and charge that the said defendant railroad company has no agreement or article of any nature whatsoever, of any legal or binding force whatever, known to the law, entitling them to enter upon, or to commit any damage or injury whatever upon, the said homestead lands of your orator and oratrix; and that each and every of their acts, doings, trespasses, injuries, commission of waste, spoil, and other wrongs to your orator and oratrix, and upon the said homestead lands of your orator and oratrix, are willful and malicious, and done with the full knowledge that the same were done without the consent and permission of your orator and oratrix, and against their will, and with the intent, by threats, force, intimidation, and bulldozing, to drive your orator and oratrix to give up their rights and claims to their said homestead lands, and

because of their old age and enfeebled health, and ignorance of their rights, to compel them to surrender and convey the same to said railroad company at whatever price they may name.

"And the said defendants sometimes pretend that said proposed railroad is a great public improvement, and will be of great advantage to your orator and oratrix, and will increase the value of property in the vicinity along its proposed line; whereas your orator and oratrix charge the direct contrary thereof to be the truth, and charge that the increase of value of their neighbors' land is but poor compensation to them for the destruction of their home, for which they have endured the struggles, toil, and lot of the pioneer, to carve out for themselves from the wilderness, without reasonable and just compensation therefor.

"All which actings and doings, refusals and pretenses, are contrary to equity and good conscience, and tend to the manifest wrong and injury of your orator and oratrix in the premises."

They further show that they have no relief save in equity, and ask an answer from the defendants, and pray an injunction to prevent the waste and damage alleged as threatened, and against entry of defendants upon their said homestead premises, and such further and other relief in the premises as the circumstances of the case may require.

On or about the tenth day of November, 1887, the defendants filed their answer; and upon the fifteenth of the same month a motion to vacate and set aside the order granting the injunction was argued and submitted in the circuit court for the said county of Ionia, in chancery, and said motion denied by the circuit judge thereof.

The grounds of said motion, as stated, were as follows:

"1. Because no cause is charged, and no grounds for equitable relief stated, in said bill of complaint.

"2. Because no exigencies are shown necessitating or authorizing the granting of an injunction.

"3. Because said bill of complaint shows upon its face that defendants were in possession of the property which the injunction granted seeks to dispossess them of.

"4. Because all the averments in said bill have been fully and fairly answered and denied under oath.

"5. Because there is no prayer for such process in said bill of complaint.

"6. Because, on the bill and answer filed, such order should be vacated and set aside. This motion is based on the records and files in said cause, including bill of complaint and answer thereto."

It is claimed by counsel for the defendants that the bill is fatally defective, in not alleging the value of the homestead sought to be protected; and they cite in support of their claim the case of *Shoemaker v. Gardner*, 19 Mich. 96. It was there held, on demurrer, that the bill was defective, because it did not aver that the value of the mortgaged premises, claimed as a homestead, did not exceed the sum of $1,500. The decree was reversed for this reason, but the case was remanded to the court below, with leave to the complainants to amend their bill. It does not appear that the bill stated the area of the mortgaged premises, or whether the same consisted of a farm or village property.

The averments in the present bill state clearly and explicitly enough that the complainants are living upon 40 acres of land, which is their homestead, and that the entry of the defendants was upon this 40 acres, and this homestead. There can be no doubt, from the statements of the bill, but that complainants claim the entire 40 acres as their homestead. Ordinarily, it seems to me, this would be equivalent to an averment that its value did not exceed the constitutional limit of $1,500.

The Constitution authorizes the selection and holding of a homestead in the country not exceeding 40 acres of land, not exceeding in value $1,500. Now, if one says,—

"This whole parcel of forty acres is my homestead, selected by me under the Constitution,"—

Would not that be considered by every one hearing the remark as an averment implying that the whole premises were not worth to exceed the constitutional limit? There is no necessity of any technicality of pleading, either at law or

in equity, in this age of liberality and advancement in the administration of justice.   That averment is sufficient, either in a declaration or bill of complaint, which necessarily covers with its language the full information of the claim sought to be collected or enforced.   The language of the pleader, in the bill of complaint before us, clearly imports that the whole 40 is claimed as a homestead, which necessarily implies that it is not worth over $1,500; and that, as plainly as if the fact itself were stated in words and figures.

The allegations, therefore, in my opinion, are sufficient to support the claim of a homestead in the premises described in the bill, and in the whole of them.

It is also insisted that the bill avers enough to show that the defendant corporation has some kind of a contract with the husband, Hiram Evans; and that, if it has, he might have the right, if he chose, to select his homestead upon another 40 acres which he owns adjoining the 40 upon which his house stands; and that the execution of the contract upon his part, granting the right of way through the 40 claimed in the bill as a homestead, may be considered as such a selection, or at least that he selects his homestead upon other land than that upon which the company has entered under his contract.

It appears from the record before us that the railroad company did have such a contract from the husband, before the defendants entered upon the premises, but that the wife did not sign it.

But, if the averments of the bill be true, the homestead had been selected before this contract was made, and for many years before.   It has has never yet been held in this State that a selection of a homestead must be made in writing and recorded, or that any other particular formality must be gone into, in order to fix or preserve this right to a man and his family.   The occupancy of the parcel by the placing of the dwelling-house thereon, and living within it, making

the home there, is sufficient of itself to declare it a homestead, and is notice to all of its selection. *Riggs v. Sterling,* 60 Mich. 643 (27 N. W. Rep. 705), and cases there cited. This homestead, so selected, and exempt under our laws, is not for the benefit of the husband alone, but for the use and protection of the wife and children as well. When once selected, it cannot be abandoned or alienated by the husband without the consent of the wife. See *Riggs v. Sterling, supra,* and cases cited.

It might have been better pleading if the complainants had set out in their bill the contract in full, or the substance of it, and then averred that it was void for want of execution by the wife; but it sufficiently appears from the bill that the contract held by the railroad company, if any, was one signed by Hiram Evans alone. It needs, therefore, only the averments that the premises are the homestead of the complainants, and that Harriet Evans is the wife of Hiram Evans, and that they were living upon the land, to show that such contract is void, as against the homestead, for want of her signature. These averments are found in the bill.

The bill shows an aggravated assault upon the rights of the wife. It matters not what contracts Hiram Evans has made, or what licenses he has given to the railroad company. It is to be presumed that they were informed of the rights of the wife in the premises; and the method of their procedure shows that they intended to run rough-shod over such rights. At the first break of the Sabbath, a large force enter upon this land, and tear down the barn upon the premises, without reference to what effect the elements may have upon its contents. The choosing of the Sabbath for this undertaking is evidence that the corporation had no such faith in its right to the premises that it was willing to submit its claims to the tribunals of the law; but rather that, conscious of the weakness of its title, it sought to gain possession of the

land before the authority of the law could be invoked to prevent it.

There can be no excuse for such conduct, under the showing of the bill; and courts will not hasten, because of a few technical defects in the bill, to uphold such a course of proceeding, or to so rule as to open the way for further violence in that direction.

The order of the circuit judge granting the injunction, and the order of the circuit court for the county of Ionia, in chancery, refusing to vacate the same, must stand, with costs against the defendants.

The other Justices concurred.