## APPEAL OF ROBERT G. GORDON.

Docket No. 5806. Promulgated January 10, 1927.

An amount received by an attorney for professional services rendered to the Commonwealth of Kentucky under a contract is not exempt from income tax.

*S. Lyman Barber, Esq., Robert N. Miller, Esq.,* and *Harry Friedman, Esq.,* for the petitioner.
*Ellis W. Manning, Esq.,* for the Commissioner.

This is an appeal from the determination of a deficiency of $1,398.34 for the year 1921, resulting from the Commissioner including in the petitioner's taxable income an amount of $8,816.79 received during the year from the Commonwealth of Kentucky, for professional services rendered under a contract and in connection with the ascertainment and collection of inheritance taxes due from an estate.

### FINDINGS OF FACT.

Petitioner is a resident of Louisville, Ky., where during the past twenty-five years he has been engaged in the practice of law.

Some time prior to October 10, 1917, Mrs. Mary Lily Bingham died in Jefferson County, Kentucky, where she had been residing for a number of months. It was known that she had left a large estate. However, it appeared that no substantial portion of it was located in Kentucky. Her will was probated in Florida, and shortly thereafter two trust companies in Louisville engaged in litigation as to which of them was the duly and properly appointed and qualified administrator with the will annexed. Subsequently the will was also probated in Kentucky, and that precipitated a controversy between the two trust companies over their appointment as administrators.

At this time the Attorney General of Kentucky was in ill health. The condition of the work in his office was such that the three assistants and the clerk regularly provided him by statute had all the work they could properly do.

In this situation the Attorney General, believing that the matter of the collection of the inheritance tax due from the estate of Mrs. Bingham required special attention, notified the Governor that an emergency existed and requested that additional counsel be appointed.

The pertinent provision of the Kentucky law relative to the appointment of additional counsel to the Attorney General appears at subsection 5 of section 112 of Carroll's Kentucky Statutes, and reads as follows:

The attorney-general and his assistants shall attend to all litigation and business in or out of the state, required of him or them under this act, or other

existing law or laws hereinafter enacted, and also any litigation or business that any state officer may have in connection with or growing out of his official duty; and no state officer, board of trustees or the head of any department or institution of the state shall have authority to employ or to be represented by any other counsel or attorney-at-law, unless an emergency arises, which, in the opinion of the attorney-general, requires the employment of other counsel, in order to properly protect the interest of the commonwealth, in which event the attorney-general shall, in writing, setting forth the reasons for such employment, request the governor to employ such additional counsel. Before such employment, said written requests shall be filed in the office of the secretary of state, and shall be a public record, and a copy thereof shall be retained and kept on file in the office of the attorney-general.

Before such counsel is employed, his fee and compensation shall be agreed upon and fixed by written contract by the governor and said counsel, subject to the approval of the attorney-general, and copies thereof shall be kept on file in the office of the attorney-general and the secretary of state.

Subsequent to notification by the Attorney General that an emergency existed, the Governor of Kentucky, on October 10, 1917, entered into the following contract with the petitioner and two others:

This contract made and entered into this the 10th day of October, 1917, between A. O. Stanley, as Governor of the Commonwealth of Kentucky, of the first part, and Robert G. Gordon, Hite Huffaker and James Garnett, parties of the second part.

WITNESSETH: That whereas the Commonwealth of Kentucky is vitally interested in the collection of the entire amount of the inheritance taxes which may be due it from the estate, heirs, devisees, distributees, legatees and personal representatives of Mrs. Mary Lily Bingham, deceased, late of Jefferson County, Kentucky, and

Whereas, the Attorney General has delivered to first party his opinion in writing to the effect that such an emergency exists as requires the employment of additional counsel in order to properly protect the interests of the Commonwealth in the premises, and setting forth his reasons therefor and requesting the employment of such additional counsel, which said opinion and request have been filed in the office of the Secretary of State, and a copy thereof retained in the office of the Attorney General, and

Whereas, the first party concurs in the reasons and conclusions set forth in said request and opinion, and

Whereas, second parties are regularly licensed and practicing attorneys of the Commonwealth of Kentucky,

Now, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set out, the parties hereto agree as follows:—

(1) First party hereby employs second parties as special counsel to represent the Commonwealth of Kentucky in the ascertainment of the amount and collection of inheritance taxes due or which may be due the Commonwealth of Kentucky from the estate or beneficiaries of said Mrs. Mary Lily Bingham, deceased, or the legal representatives of said estate.

(2) Second parties agree and bind themselves to

(a) make a prompt and thorough investigation of the nature and extent of said estate subject to inheritance tax and report the result thereof to said first party and to the Attorney General.

(b) To render to first party and to the Attorney General, as promptly as can reasonably be done, an opinion as to the legal rights of the Commonwealth

with respect to the collection of said tax, and as to what steps should be taken by the Commonwealth to enforce said collection.

(c) To institute and conduct in any and all courts within and outside of the Commonwealth any and all litigations which in their judgment or the judgment of the Attorney General may be necessary and proper for the collection of said taxes and for the protection and interest of the Commonwealth.

(3) All reasonable traveling and other necessary expenses incurred by second parties, both in and out of the State, on business covered by this contract of employment, shall be treated as a part of the consideration for this contract, and a part of the compensation for services rendered, and shall be paid on vouchers approved by first party, when accompanied by receipts as are now required by law for payment of expenses to officers and employees of the Commonwealth.

(4) The compensation to be paid by the Commonwealth to the second parties for the services rendered and to be rendered by them under the provisions of this contract shall be as follows:

(a) Second parties are to receive, jointly, a certain fee of Ten Thousand ($10,000.00) Dollars. of which sum Five Thousand ($5,000.00) Dollars shall be paid upon the execution of this contract, and the balance of Five Thousand ($5,000.00) Dollars on January 1st, 1918, out of the State Treasury, upon vouchers duly approved by first party; and in the event the taxes herein referred to be collected without litigation, or with litigation or other proceedings in the County Court of Jefferson County, Kentucky, only, then said second parties shall receive a sum equal to two and one-half (2½) per cent of the amount of taxes collected, less the sum of Ten Thousand ($10,000.00) Dollars, heretofore fixed as a fee certain, said fee to be paid as and when said taxes are collected or their payment secured by bond, as prescribed by the inheritance tax law—that is to say, if said taxes should be collected or secured in parts or installments, second parties shall be paid on account of fee a sum equal to said two and one-half (2½) per cent of such part so paid or secured at the time when same shall be collected or so secured.

(b) In the event the collection of said taxes should involve litigation in any court or courts other than the County Court of Jefferson County, Kentucky, then said second parties shall jointly receive, in lieu of the fee equal to the two and one-half (2½) per cent of the amount collected or secured as hereinbefore provided, a sum equal to Five (5) per cent of the aggregate amount of all inheritance taxes collected or secured as above set out, under this contract, less the Ten Thousand ($10,000.00) Dollars above fixed as a fee certain, said fee to be paid at the time and upon the terms and conditions as set out in paragraph (a) immediately preceding.

(5) Second parties hereby accept the foregoing employment and agree to faithfully discharge the duties thereunder upon the terms and conditions hereinabove set out.

This contract is executed in four counterparts, one for each of the parties hereto.

(Signed)        A. O. STANLEY,<br>
*Governor of the Commonwealth of Kentucky.*<br>
ROBT. G. GORDON.<br>
HITE HUFFAKER,<br>
JAMES GARNETT.

Approved October 10, 1917.
 CHARLES H. MORRIS,
  *Attorney General.*

Under the above contract the petitioner, in conjunction with the two associate counsel, made investigations which carried him into other States, assisted in filing suits, preparing and trying such suits and in the preparation of briefs in connection therewith. He also signed stipulations and objections as such became necessary during the progress of the suits. The Attorney General supervised in a general way the work of the petitioner. There was no matter of policy in any important feature of the case which was determined upon without the acquiescence of the Attorney General, to whom oral and written reports of the progress of the case were made. The Attorney General's name appeared at the top of the list of counsel on all briefs as the chief law officer of the Commonwealth.

The reasonable traveling and other necessary expenses of the petitioner were paid by the Commonwealth upon submission of vouchers accompanied by receipts, as was required by law for payment of expenses of officers and employees. The same form of receipt book was issued to petitioner as to officers and employees of the Commonwealth. The Attorney General furnished petitioner with a card or certificate showing that he was an employee of the Commonwealth and instructed petitioner, when traveling on business connected with the case, to make affidavit that he was on business for the Commonwealth so that the Federal transportation tax would not attach to his railroad and Pullman tickets.

The petitioner did not take an oath of office, nor was any commission issued to him. In Kentucky no assistant in the Attorney General's office is issued a commission or required to take an oath of office.

Petitioner's services under the contract continued until February or March, 1920. During this time he maintained his office and continued his law practice. While petitioner always gave precedence to the work arising under the contract, yet he lost no other business on account of the contract. From the time the contract was entered into until his services thereunder were completed, he devoted from 25 to 30 per cent of his time to work arising in connection with it.

The only services performed by the petitioner for the Commonwealth of Kentucky were those under the contract quoted above.

During the year 1921 the petitioner received $8,816.79 from the Commonwealth of Kentucky as compensation for services rendered under the contract. In filing his income-tax return for 1921 he did not include this amount as taxable income. The Commissioner included the amount as taxable income on the basis that it did not represent compensation received by an officer or an employee of a State or political subdivision thereof, and determined a deficiency of $1,398.34.

OPINION.

TRAMMELL : The question presented in this appeal is whether the income received by the petitioner from the Commonwealth of Kentucky, as compensation for services rendered in the handling of litigation and other legal work for the Commonwealth under the contract set out in the findings of fact, is exempt from Federal income tax. It is not contended that the petitioner was an officer of the Commonwealth of Kentucky, and clearly he was not. This leaves for consideration the question as to whether he was an employee of the Commonwealth of Kentucky, and if not an employee, whether he was such an agency or instrumentality of the Commonwealth through which it exercised an essential governmental function as to bring the case within the scope of those decisions of the United States Supreme Court holding that the very nature of our constitutional system of dual sovereign governments is such as impliedly prohibits the Federal Government from taxing the instrumentalities of a State government.

The petitioner's services were of a temporary character and not for any specific or definite period of time, and were in connection with one matter only, viz, the collection of the estate tax due the Commonwealth from the Bingham estate. With respect to one employed for a special or single transaction, the United States Supreme Court, in the case of the *Louisville, Evansville & St. Louis R. R. Co.* v. *Wilson*, 138 U. S. 501, said:

The terms " officers " and " employés " both, alike, refer to those in regular and continual service. Within the ordinary acceptation of the terms, one who is engaged to render service in a particular transaction is neither an officer nor an employé. They imply continuity of service, and exclude those employed for a special and single transaction. An attorney of an individual, retained for a single suit, is not his employé. It is true, he has engaged to render services; but his engagement is rather that of a contractor than that of an employé.

The Commonwealth of Kentucky was interested in the discovery of the nature and extent of the estate subject to tax and in the recovery of the taxes due. The means of ascertaining the information and the collection of the taxes were left to the petitioner and his associates, subject only to the judgment of the Attorney General with respect to the necessity or propriety of litigation, but even in that respect the judgment of the Attorney General was not by the terms of the contract made controlling on the petitioner. When proceedings were instituted, under the terms of the contract, the petitioner and his associates were solely responsible for the conduct of the case and for the results obtained. The services rendered were no different than those which a lawyer would ordinarily render to a private client. The taxpayer could use his own discretion as to the hours of his work,

over which the Commonwealth had no control. He was free to use his own efforts according to his own judgment and pleasure as to the manner of performing his work, subject, as above stated, to the advice and judgment of the Attorney General as to the propriety of litigation which, however, was not made binding upon him under the terms of the contract. The relationship of master and servant did not exist. He was free to determine what was to be done and how it should be done. The petitioner, in our opinion, was, therefore, not an employee of the Commonwealth of Kentucky, but his position was that of an independent contractor with the Commonwealth. *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514.

Inasmuch as the petitioner was neither an officer nor an employee of the Commonwealth of Kentucky, his case does not come within the scope of the decisions of the United States Supreme Court in the cases of *Collector* v. *Day*, 11 Wall. 113, and *Dobbins* v. *Commissioners*, 16 Pet. 435. Those cases held that the officers and employees of a State or the Federal Government who administer its laws and carry on essential governmental functions are immune from taxation by the other government.

Officers and employees are the usual means by which a State carries into execution its sovereign powers, and, with respect to taxes upon individuals or their income, the Supreme Court has not gone beyond those decisions, in which there was no question but what the individuals were officers or employees. The petitioner was one who, as a private practitioner, was retained by the Commonwealth of Kentucky to represent it as a client in a particular matter. He rendered services in that case without in any way divesting himself of the character of a private practitioner of law and only by virtue of a special contract for the particular matter. It is contended, however, that even if he was not an officer or employee of the Commonwealth, he was nevertheless, by virtue of his employment, an instrumentality or agency by or through which the Commonwealth functioned in the exercise of an essential sovereign power, viz, the collection of a tax. It is contended that the compensation received by him was for services rendered as such instrumentality or agency and is, therefore, exempt from Federal taxation.

In the case of the compensation of an officer or employee of a State, the imposition of the Federal tax operates to diminish his compensation, is a direct burden upon the State, and impairs it in the exercise of its sovereign powers. *Dobbins* v. *Commissioners* and *Collector* v. *Day, supra.* It is, therefore, sufficient, in order to establish the exemption from Federal taxation of compensation received for services of such a person, to show that he is an officer or employee of the State.

In the case of a person employed by a State as a contractor engaged in rendering services in a particular matter or transaction, the same considerations do not of necessity obtain. It is true that compensation is a necessary incident of such services as well as in other employment, but the important question to be considered is whether a Federal tax imposed upon the compensation of such a contractor will have the effect of impairing the efficiency of the agencies or instrumentalities of the State government in any substantial way or amount to an interference with the exercise of a sovereign power. There is no evidence 'of such fact here. It does not appear that the Commonwealth was interfered with to any extent on account of the tax in securing the petitioner's services or that it did not receive as efficient service without any additional financial or other burden on that account.

In the case of *Metcalf & Eddy* v. *Mitchell, supra,* the United States Supreme Court said:

* * * The tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity.

The court in that case also said:

The tax is imposed without discrimination upon income whether derived from services rendered to the state or services rendered to private individuals. In such a situation it cannot be said that the tax is imposed upon an agency of government in any technical sense, and the tax itself cannot be deemed to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way.

In conclusion, the court in the case of *Metcalf & Eddy* v. *Mitchell, supra,* said:

But we do decide that one who is not an officer or employee of a state, does not establish exemption from federal income tax merely by showing that his income was received as compensation for service rendered under a contract with a state; and when we take the next step necessary to a complete disposition of the question, and inquire into the effect of a particular tax, on the functioning of the state government, we do not find that it impairs in any substantial manner the ability of plaintiffs in error to discharge their obligations to the state or the ability of a state or its subdivisions to procure the services of private individuals to aid them in their undertakings. Cf. *Central Pacific Railroad* v. *California,* 162 U. S. 91, 126. We therefore conclude that the tax * * * was properly asssesed.

The Revenue Act of 1921, which was in effect during the taxable year involved, did not by its terms exempt the salaries of officers and employees of a State from the income tax, but section 1211 of the Revenue Act of 1926, which is retroactive and effective as to all prior revenue acts, provides as follows:

Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for per-

sonal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.

The above section is the only provision of the statute with respect to the compensation received by State officers and employees. That section does not expressly exempt the compensation of officers or employees of the State from the Federal income tax. It, however, clearly indicates that it was not the intention of Congress to tax compensation for personal services rendered by an officer or employee of a State. In effect, it merely incorporates into the statute the principle that had been long established by judicial construction and may fairly be considered as an interpretation of the different revenue acts. The United States Supreme Court had long prior to the enactment of the Revenue Act of 1926 held that the Federal Government had no power to levy or collect a tax upon the compensation of officers or employees of States. The above section of the statute, however, has no relation to the question as to whether the compensation of individuals who were neither officers nor employees of a State government should or should not be subjected to the Federal tax.

Section 213 (a) of the Revenue Act of 1921 reads in part as follows:

Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades * * *.

The above section is clearly broad enough to cover and to impose a tax upon the compensation received by this petitioner for services rendered in his professional capacity to the Commonwealth of Kentucky as an attorney. There is no other provision contained in the statute which would exempt such compensation, and his relationship to the Commonwealth was not such as to bring him within the scope of the decisions of the Supreme Court holding that the Federal Government is without authority to levy a tax upon the agencies or instrumentalities of the States.

*Judgment will be entered on 15 days' notice, under Rule 50.*