CHARLES M. HAFT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31234. Promulgated July 31, 1930.

*Charles M. Haft, Esq.*, pro se.
*C. A. Ray, Esq.*, for the respondent.

432

OPINION.

SEAWELL: The issue with respect to the deficiency asserted for the year 1923 involves the question whether the amount of $10,100 received by the petitioner in that year from the commissioners of Cook County, Illinois, as compensation for legal services rendered in aiding the attorney general, under the circumstances set out in our findings of fact, constitutes taxable or nontaxable income.

The petitioner insists the amount is exempt from Federal income tax and so treated the same in his 1923 tax return. The respondent upon audit of said return included the amount as taxable income and as a result proposed a deficiency in tax of $826.25 as heretofore indicated.

The petitioner does not in his assignments of error specifically allege that while serving as a special assistant attorney general in 1923, under appointment of the Attorney General of Illinois, he was "an officer or employee" of the State or a political subdivision thereof, and that, therefore, the compensation so earned and received by him is exempt. His assignments of error and insistence are in effect, however, that the compensation so received is not taxable because paid him for his personal services as a special assistant attorney general, the inference being that as such he was "an officer or employee" of the State of Illinois or a political subdivision thereof.

The pertinent section of the 1926 Revenue Act is as follows:

SEC. 1211. Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.

There is no evidence that the petitioner received any commission from the governor, or took any oath or executed any bond as an officer or employee of the State or of Cook County such as the Illinois law requires of the attorney general and State's attorneys before entering upon the discharge of their official duties. See Cahill Illinois Revised Statutes (1929 Ed.), ch. 14, par. 1. He never entered into any written contract or agreement with the attorney general relative to his employment. It does not appear from the evidence that his services were engaged by the attorney general for any definite period nor did the attorney general under their oral agreement have any exclusive call on his time. No agreement with the commissioners of Cook County as to his duties or length of service is shown. His contract was with the attorney general, though his compensation was paid by Cook County. There appears to be no express statutory provision for special assistant attorney general.

Petitioner was a member of a law firm and the compensation he received for his services under his agreement with the attorney general and from other clients was placed to the credit of the firm, as were the fees of the other members of the firm. All their fees became a common fund, each member by partnership agreement receiving a certain percentage thereof, the petitioner's share for 1923 being as stated in our findings of fact.

In the circumstances of this case, we are of the opinion that the petitioner has not shown himself to be either an officer or an employee of the State of Illinois or of Cook County as those terms are defined and construed by the courts.

In *Louisville, etc., Railroad Co.* v. *Wilson*, 138 U. S. 501, the Supreme Court of the United States said:

The terms " officers " and " employees " both, alike, refer to those in regular and continual service. Within the ordinary acceptation of the terms, one who is engaged to render service in a particular transaction is neither an officer or employee. They imply continuity of service, and exclude those employed for a special and single transaction. An attorney of an individual, employed for a single unit, is not his employee. It is true, he has engaged to render services; but his engagement is rather that of a contractor than that of an employee.

The petitioner in his brief cites *David A. Reed*, 13 B. T. A. 513, as being more nearly analogous to the instant case than others mentioned and relies on the fact that the Circuit Court of Appeals of the Third Circuit, in 34 Fed. (2d) 263, reversed this Board in that case and held that compensation received by Reed was exempt from the Federal income tax. Since the decision by the Circuit Court of Appeals in the *Reed* case, *supra*, the Supreme Court of the United States on May 5, 1930, passed on the same, reversing the decision of said Circuit Court of Appeals, on the authority of *Lucas* v. *Howard*, 280 U. S. 14A, which reversed the Circuit Court of Appeals of the Fifth Circuit in said case, on the authority of *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514. See also *Robert G. Gordon*, 5 B. T. A. 1047; *Emma B. Brunner, Executrix*, 5 B. T. A. 1135; *S. P. Freeling*, 7 B. T. A. 1238; *Joseph S. Laurent*, 12 B. T. A. 474; *Edmund D. Adcock*, 14 B. T. A. 844; and *Blair* v. *Byers*, 35 Fed. (2d) 326.

In the circumstances of the instant case, we are of the opinion that the petitioner's services, for which he received $10,100 compensation, were not rendered as an officer or employee of the State of Illinois or of Cook County, but in the nature of an independent contractor, and on the authority of the cases cited, *supra*, we hold that such compensation is taxable income as determined by the respondent.

The second question for our decision is whether the petitioner is entitled to the claimed loss of $29,950, which he took in his 1924 tax return and which the respondent disallowed, resulting in part in the deficiency of $1,461.76 for said year.

The petitioner in that year surrendered one-half of his 519 shares of stock held by him in the C. J. Sykes Manufacturing Co. He had paid $51,900 for his stock and insists that when he surrendered and had canceled one-half of his stockholdings and other stockholders did likewise, in accordance with the resolutions of the directors and stockholders of said company as set forth in our findings of fact, he then, in 1924, suffered a loss in the amount of $25,950, the original cost of the stock so surrendered by him.

In the instant case, the directors and stockholders of the C. J. Sykes Manufacturing Co. deemed it advisable to eliminate an existing deficit by charging off certain losses—as often occurs with corporations operating unsuccessfully and in debt, and having each stockholder surrender and have canceled 50 per cent of his stock, which was done in the year in issue.

If the surrender by the petitioner of 50 per cent of his stock should be considered merely as a gift, no deductible loss is allowable therefor under the Revenue Act of 1924.

If the petitioner had surrendered and had canceled 50 per cent of his stock in said company and the same were not considered a gift, and if other stockholders made no such surrender, the petitioner might with more reason contend he had suffered a loss. In the instant case, however, all other stockholders made a surrender of the same percentage of their stock, so that the petitioner had the same proportionate interest in the actual asset value of the stock of the company after as before such surrender.

By complying with the terms of the resolutions passed by the directors and stockholders in March, 1924, petitioner held only half as many shares of stock as he did before doing so, but the 259½ shares retained by him had exactly the same asset value as the 519 he formerly held. *Edith Scoville et al.*, 18 B. T. A. 261.

The petitioner and the corporation in which he owned stock are separate entities. The corporation in which petitioner owned stock suffered its loss prior to the taxable year 1924.

After the stockholders voluntarily surrendered 50 per cent of their stock, the capital stock of the Sykes Co. was increased from $100,000 to $150,000. This was done in the belief that it was in the interest and for the benefit of the corporation and its stockholders. On account of such action and with better management, petitioner's stock might in the future become much more valuable and when actually sold be disposed of at a large profit. When petitioner's stockholdings were reduced 50 per cent and other stockholdings the same, there was no sale of stock.

As was said by the United States Supreme Court in *Lucas* v. *American Code Co.*, 280 U. S. 445: "Generally speaking, the income-

tax law is concerned only with realized losses, as with realized gains," citing *Weiss* v. *Wiener*, 279 U. S. 333, wherein it is stated the loss must be actual and present, not merely contemplated as more or less sure to occur in the future. See also *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398.

Petitioner appears to rely principally on *Weiss* v. *Stearn*, 265 U. S. 242, though other cases are cited as sustaining his contention. We do not deem it necessary to discuss such cases in detail and point out wherein their facts are different from those in the instant case, because when the general principles of *Eisner* v. *Macomber*, 252 U. S. 189, are applied to the facts herein we are of the opinion the respondent committed no error in disallowing the claimed loss of $25,950 in 1924 asserted by petitioner.

In the instant case it is insisted in brief for petitioner that there was "no reorganization" and "no exchange of the stock in question"; that the "organization of the Sykes Company remained the same at all times." Yet, in *Weiss* v. *Stearn*, *supra*, so strongly relied on by petitioner, Mr. Justice McReynolds in delivering the opinion of the court said:

Considering the entire arrangement, we think it amounted to a financial reorganization under which each old stockholder retained half of his interest and disposed of the remainder. Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants, and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form.

Applying the *Eisner* v. *Macomber*, *supra*, principles to the facts of the instant case, it seems clear that if the C. J. Sykes Manufacturing Co. had increased its capital stock $50,000 and then declared a stock dividend in such amount, the stockholders would have received no gain—their proportionate interests would have remained the same as before. By the same rule of reasoning, when the stockholdings of all stockholders were decreased $50,000 by cancellation, their proportionate interests remaining the same, they suffered no loss.

It is argued that the capital stock of the Sykes Co. was not decreased and " as a consequence, if the taxpayer held 50 per cent of the capital stock in the first instance and that was reduced to 25 per cent by cancellation, and the new management acquired the canceled stock, the taxpayer would then have one-fourth of the capital stock of the Company in which he before cancellation held one-half, and his proportionate interest in the assets of the Company would be correspondingly decreased."

Admitting such insistence, it would not follow that the petitioner would thereby necessarily suffer any deductible loss. Not until he

sold his stock or the company was liquidated could it be known what, if any, loss was sustained by him. Prior to such time no loss could be allowed. On the record, we are of the opinion that the respondent's determination of deficiencies in tax for the years 1923 and 1924 is correct.

*Judgment will be entered for the respondent.*