### Backer *v.* Meyer *et ux.*

*(Circuit Court, E. D. Arkansas.  November 28, 1890.)*

1. HUSBAND AND WIFE—GIFT—DELIVERY.
    A statement by a husband to his wife that he has certain bonds which are to be hers, when not accompanied by delivery of the bonds or any change in his treatment of them, does not pass titie to the bonds, or make him liable to her for their conversion.
2. SAME—FRAUDULENT CONVEYANCE.
    Property purchased by a man in his wife's name with money borrowed by him in her name, but on his credit, and that of the property, is liable for his debts.
3. HOMESTEAD—FRAUD—HUSBAND AND WIFE.
    Property purchased by an insolvent husband in his wife's name, and occupied by them as a homestead, is, as against his creditors, exempt as a homestead, in spite of the fraud

In Equity.
*Cohn & Cohn*, for complainant.
*Hemingway & Austin* and *Blackwood & Williams*, for defendants.

CALDWELL, J.  The defendant Gabe Meyer executed three promissory notes payable to the plaintiff, for borrowed money,—one dated April 2, 1884, for $5,000; one dated July 5, 1884, for $2,500; and one dated July 28, 1884, for $3,523.  The plaintiff recovered judgments on these notes on the law side of this court.  Two of the judgments aggregating $8,964.42, and costs, were rendered on the 27th of October, 1886, and the third judgment for $6,750.73, and costs, was recovered on the 14th of November, 1888.  Executions were issued on these judgments, and returned *nulla bona.*  Thereupon the plaintiff filed this bill for the purpose of subjecting to the payment of his judgments the real estate and personal property mentioned in the bill.  On the face of the record, the defendant Bertha Meyer, wife of the defendant Gabe Meyer, appears to be the owner of the real estate, and she also claims the personal property, consisting of goods, wares, and merchandise, as her separate property. Gabe Meyer has been for many years a merchant, planter, and general trader.  His business was quite extended in the lines indicated.  His business career has been marked by those vicissitudes of fortune which

not unfrequently befall persons engaged in his pursuits. In 1860 he failed, but in the course of six or seven years he was again prosperous, paid off his old debts, and continued to do a large business as a planter, merchant, and trader, until 1884, when he failed, owing a large amount, a portion of which remains unpaid. Concurrently with his failure, he began to purchase and cultivate plantations, in the name of his wife; to buy and sell lands in her name; and to purchase stocks of merchandise, and conduct mercantile pursuits, such as a boot and shoe store, liquor store, etc., in her name. The business pursuits conducted by Meyer, after his failure, in his wife's name, were about as extensive and varied, and of the same general character, as those conducted in his own name, before his failure.

The bill calls on the defendants to explain this sudden and wholesale change from the husband's to the wife's name in the purchase and ownership of property, and the conduct of business. The first and chief explanation offered is a statement to the effect that in 1868, when Meyer was solvent, he gave his wife $8,000 in United States bonds. But an inquiry into the circumstances of this alleged gift shows it to have been a mere phantom, so far as the law is concerned. On one occasion he told his wife he had $8,000 in United States bonds which were to be hers, as a gift. If the bonds were exhibited at all, they remained in his own hands. He did not at that or at any other time deliver them to his wife, or to any other person for her. He did not separate them from his other moneyed assets, or put any mark on or about them to indicate they were his wife's. He never at any time made an entry in his books giving his wife credit for the bonds or their proceeds, but treated them in all respects as his own property, and used them in the purchase of a plantation in his own name. The gift began and ended in words. There were no acts corresponding to the words to make them effectual. Fourteen years afterwards, Meyer's pleasant but delusive speech to his wife is brought forward to explain and support the wife's claim to the property in controversy. It is ineffectual for that purpose. A mere declaration that one gives another a certain thing does not constitute a gift, unless it is followed up by giving the donee possession of the thing, or by the doing of something equivalent to a transfer of the possession. *Peters* v. *Construction Co.*, 34 N. W. Rep. 190; *Flanders* v. *Blandy*, 12 N. E. Rep. 321. If Meyer's pleasing declaration to his wife made these bonds her property, then she and all other wives have good title to all the worldly goods of their husbands, for every husband at the marriage altar declares: "With this ring I thee wed, and with all my worldly goods I thee endow,"—and this declaration is made in the presence of witnesses, and is followed on the instant by a symbolic delivery of the goods, by the gift of the ring. In this case there were no witnesses, and no delivery of the bonds in fact or by symbol. The defendant's case would have been quite as strong if it had rested on the gift at the marriage altar. Meyer declared that he gave her the bonds, but he did not do it. He kept them, and used them himself, and never seems to have thought of them again until after the lapse of 14 years, and after he had

become insolvent. Mrs. Meyer acquired no sort of legal or equitable right or claim to the bonds or their proceeds by the husband's simple declaration that they were hers, and they cannot therefore be made the basis of a legal or equitable claim on her husband or his estate. Cases, *supra;* and see *Humes* v. *Scruggs,* 94 U. S. 22, 27. After his failure, Meyer used $2,500 of his money, collected on outstandings due him, in purchasing property in the name of his wife; but it is said he did this for the purpose of recompensing his wife in some measure for her bonds, which he had used. But the bonds were not hers, and any claim resting on them must share the fate of her claim to the bonds.

It is said much of the property in controversy was purchased with money borrowed in Mrs. Meyer's name, and on her credit. This contention rests on the form of the transaction, rather than the facts. Meyer signed his wife's name to the notes, but his wife had no credit, and could have had none. She is shown to be a very domestic lady, who knows absolutely nothing about business or business affairs, and who has no personal knowledge of the business conducted in her name by her husband. It is vain to talk of one having good credit with banks and wholesale merchants who has neither money nor property nor business capacity. Meyer's property was in his wife's name, and this made it necessary for him to use her name in his business transactions. Mrs. Meyer's name represented nothing of value to a bank or merchant, except Meyer's property, which stood in her name, and the credit must therefore have been given on the faith of this property, and Meyer's business capacity. *Hyde* v. *Frey,* 28 Fed. Rep. 819; *Blum* v. *Ross,* 10 Atl. Rep. 32, 116 Pa. St. 163; *Vowinkle* v. *Johnston,* 11 Atl. Rep. 634; *Trust Co.* v. *Fisher,* 25 Fed. Rep. 178. The burden of proof is on the defendant to make out her right to this property, (*Seitz* v. *Mitchell,* 94 U. S. 580, 583;) and this obligation has not been met at any point. Undoubtedly an insolvent husband may devote all of his time, skill, and talents to the management and care of his wife's property, without rendering the property, or the rents or income from it, liable for his debts. But the property must be the wife's. Property purchased in the wife's name, with the husband's means, or upon his credit when he is insolvent, is not her property, as against the claims of his creditors. In such a case, in a contest between the wife and the husband's creditors, the latter have the better right to the property, and the rents and income from it, whether produced by the labor and skill of the husband or others. Mrs. Meyer received at one time $1,200 as her distributive share of an estate in the state of Mississippi. That was her money, and with it Meyer purchased, in her name, the Park View property. The plaintiff cannot subject this property to the payment of these judgments.

The homestead of the defendants was purchased by Meyer after his insolvency in the name of his wife, but this fact does not make it any the less the family homestead. If Meyer had purchased the homestead in his own name, it would, under the constitution and laws of this state, have been exempt, and the creditors were not therefore defrauded or prejudiced by the fact that it was purchased in the name of he wife.

As to the Park View property and the homestead the bill is dismissed. A decree will be entered directing the sale of the other property to satisfy the plaintiff's judgments.