## LOUISVILLE, EVANSVILLE AND ST. LOUIS RAILROAD COMPANY v. WILSON.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

No. 153. Argued January 21, 1891. — Decided March 2, 1891.

Some months after the sale of a railroad under foreclosure, and its surrender by the receiver to the corporation organized to receive it, the sale being made with a provision that the purchaser should pay all debts adjudged to be superior in equity to the deeds of trust foreclosed, an order was made giving such priority to the appellee. *Held*, that an appeal lay in favor of the purchaser.

The term "wages of employés," as used in an order directing the payment of certain classes of debts out of the proceeds of the sale of a railroad under foreclosure, in preference to the secured liens, does not include the services of counsel employed for special purposes.

Services of an attorney in securing payment to the receiver of a railroad of rent due for property of the railroad company and the return of the property, are entitled to priority of payment over the secured liens on a sale of the road under foreclosure of a mortgage upon it.

The other claims of the appellee, not being rendered for the benefit of the security holders, are not entitled to such priority.

ON the 30th day of December, 1884, Isaac T. Burr filed in the Circuit Court of the United States for the Southern Dis-

trict of Illinois his bill of complaint against the Louisville, Evansville and St. Louis Railway Company; the Mercantile Trust Company of New York, trustee; Noble C. Butler, trustee; and Robert A. Watts, trustee. The bill set forth the fact that the complainant was a judgment creditor of the railway company; and the others, trustees in deeds of trust given by the company. Subsequently, a cross-bill was filed by two of the trustees. The original bill prayed the appointment of a receiver, and on the 3d day of January, 1885, George F. Evans was appointed receiver and took possession of the railway property. In the order of appointment was this provision: "It is further ordered, adjudged and decreed that the said receiver, out of the income that shall come into his hands from the operation of the said railway or otherwise, do proceed to pay all just claims and accounts for labor, material, supplies, salaries of officers and wages of employés that may have been earned or furnished within six months prior to January 1, 1885, and all taxes." The outcome of the litigation was the sale of the road under a decree of foreclosure of the deeds of trust. This decree was entered April 23, 1886. A similar decree of sale was entered in the Circuit Court of the United States for the District of Indiana, in which court, also, foreclosure proceedings were had, the road extending through both districts. On the 9th of June, 1886, the property was sold in obedience to these decrees. On the 22d of July, 1886, this sale was confirmed. On the 8th of October, 1886, an order was entered in the Circuit Court in the Indiana District, directing the receiver to surrender the possession of the property sold to the Louisville, Evansville and St. Louis Railroad Company, a corporation organized by the parties interested in the purchase, and to which the purchasers had conveyed all their rights under their purchase. This order was not entered in the Illinois Circuit Court at that time; but, nevertheless, on the 11th of October, 1886, the receiver surrendered the entire property to the new corporation. In the order directing this surrender were provisions for the payment by the new corporation of all claims which might be adjudged superior in equity to the deeds of trust foreclosed, with the

right to retake possession of the property if payment was not made, and with the further right to the new corporation to appeal from any adjudication of such claims.   Appellee intervened in the Illinois Circuit Court, and on the 10th day of August, 1887, an order was entered adjudging that he be allowed $7650.   This order also provided: "And the court does further order, adjudge and decree that the receiver, George F. Evans, forthwith pay the same to the said petitioner, together with the costs of the proceedings, out of any money in his hands arising from the operation of the said railway as such receiver, and, if that is insufficient, then that the same be paid, prior to the bonded debt, out of the proceeds of the sale of the mortgaged premises."   On the 29th of August, 1887, the order entered in the Indiana Circuit Court, on October 8, 1886, was, by the direction of the Circuit Judge, entered in the Illinois Circuit Court as of the date of October 8, 1886, and on the same day an order was entered reciting the appearance of the receiver; that he showed to the court that he had surrendered possession on the 11th of October, 1886; and, in addition, providing, "in consideration thereof, and of the decree herein entered on August 10, 1887, it is ordered, adjudged and decreed that the sum of seven thousand six hundred and fifty dollars, allowed the intervenor, Bluford Wilson, together with the costs incurred on his intervention, is a lien and charge upon the earnings of the said property while in the hands of the receiver, and upon the proceeds of sale of the mortgaged premises, prior and superior to the deeds of trust of June 1, 1881, and March 1, 1882, and it is thereupon adjudged, ordered and decreed that the Louisville, Evansville and St. Louis Railroad Company shall, within twenty days from this date, pay to the said intervenor or into court for him the said sum of seven thousand six hundred and fifty dollars, ($7650,) with interest from this day, and the costs of the said intervenor, upon this intervention."   The order also gave an appeal to the new corporation, and granted a supersedeas on the filing of a bond in the penalty of ten thousand dollars.   This bond was filed, and the appeal perfected.   The appeal was taken from the order of August 29.

*Mr. Alexander P. Humphry* for appellant. *Mr. J. E. Igle-hart*, *Mr. Edwin Taylor* and *Mr. George M. Davie* were with him on the brief.

*Mr. Bluford Wilson* in person for appellee.

MR. JUSTICE BREWER delivered the opinion of the court.

We think the appeal was properly taken. At the time the order of August 10 was entered, the receiver was not in possession; he had surrendered the property more than nine months prior thereto. When he surrendered the property, he closed up his receivership. A decree against him was not personal, but official. It was not the contemplation of the court that any personal liability should be cast upon him. He not only had no railroad funds or property in his possession, out of which to pay this allowance, but he had no right to retake that which he had surrendered. The reservation made in the order entered in the Indiana court, of the right of the court to retake possession of the property surrendered, conferred no rights on the receiver; it was simply a reservation to the court, which might, under that reservation, by the old or a new receiver, at any time retake possession when its allowances within the scope of the order of surrender were not paid. So, the order of August 10 was a mistake. It neither bound the appellant nor the property which it had received. It was not a purchaser of the railroad property ; and did not become, until August 29, a party to the record in the Illinois court. It is true that, on August 29, the Circuit Judge, directing the entry in the Illinois court of the order made nearly a year before in the Indiana court, directed that it should be entered as of August 8, 1886, the date of its entry in the Indiana Circuit Court; but such *nunc pro tunc* entry, while proper for the protection of the receiver, could not antedate the subjection of the new corporation to the orders and decrees of the Illinois Circuit Court. It could justly say, that it was not a party to the proceedings in that court until the entry of August 29, 1887. There was no misunderstanding, no misrepresentation, no deceit, in these matters. Immediately, on the

entry of this order of August 29, a transcript of the order from the Indiana Circuit Court, a new decree in favor of the intervenor was entered, a decree for the first time binding the appellant. This was not an order in execution, merely, of the former decree, such as those noticed in the case of *Trust Company* v. *Grant Locomotive Works*, 135 U. S. 207; but it was the first order against and binding the appellant. We are, therefore, compelled to notice the merits of this allowance.

The allowance to the appellant was for three matters. He does not sue for services as general counsel of the mortgagor company, or for salary as an officer of that company. With respect to the provision in the order of appointment, he claims to come under the descriptive words therein used, " wages of employés." If that fails him, then he appeals to the general equity powers of the court to compensate him as one whose services were beneficial to the security holders. On the meaning of the words " wages of employés," he cites the case of *Gurney* v. *Atlantic and Great Western Railway Company*, 58 N. Y. 358, in which an order directing the receiver of a railway company, thereby appointed, to pay debts " owing to the laborers and employés " for labor and services, was held broad enough to include a debt due to Hon. Jeremiah S. Black, for professional services as counsel. Without criticising that decision, or noticing the special circumstances which seemed in the judgment of that court to justify the inclusion of professional services within the descriptive words of the appointment, we are of the opinion that the term " wages of employés," as used in the order now under consideration, does not include the services of counsel employed for special purposes. *Vane* v. *Newcombe*, 132 U. S. 220, 237.

The terms " officers " and " employés " both, alike, refer to those in regular and continual service. Within the ordinary acceptation of the terms, one who is engaged to render service in a particular transaction is neither an officer nor an employé. They imply continuity of service, and exclude those employed for a special and single transaction. An attorney of an individual, retained for a single suit, is not his employé. It is true, he has engaged to render services; but his engagement is

rather that of a contractor than that of an employé. The services of appellee, therefore, did not come within the order appointing the receiver. We would not be understood as asserting, even by implication, that the terms of an order of appointment of a receiver vest in all claimants an absolute right as against the security holders. Such terms may be, and doubtless are, a protection to the receiver; and what he does and pays within those terms may be, thereafter, beyond the challenge of any party interested in the property. But when he has not acted, and the question is presented to the court as to the liability of the property for any claim, the court is not foreclosed by the order of appointment, but may consider and determine equitably the extent of liability of the property to such claim, and what its rights of priority may be. Hence, as the receiver did not pay this claim, the parties in interest may rightfully challenge its priority, even if it were within the very letter of the order of appointment of the receiver.

What were the services for which the appellee made his claim? and were they so beneficial to the security holders that a court of equity might justly give them priority? And the question, it will be borne in mind, is not, whether out of the earnings of the road such claims are payable, but whether, where there are no surplus earnings, they may be paid out of the corpus of the property in preference to secured liens.

The first matter is this: Prior to the appointment of a receiver the railway company leased to the Illinois Midland Railway Company certain engines. When the latter road passed into the hands of a receiver intervenor was employed to get the engines back, and rental for their use. In this service he secured an allowance against its receiver for $1500, upon which $1340.13 was paid, and paid after the receiver in this case was in possession. The only testimony as to the value of such service fixed it at $300. Part of such service was rendered more than six months prior to the appointment of a receiver in this case; but, apparently, the important part within such time. This recovery enured to the benefit of the security holders, as placing so much more money in the hands of the receiver for the purpose of discharging obligations

against the company payable before the bonds.  We think it may fairly be held that the party who takes the benefit of such a service ought to pay for it; and that equity may properly decree payment therefor.  As justly remarked by Lord Kenyon in *Read* v. *Dupper*, 6 T. R. 361, " the principle has long been settled that a party should not run away with the fruits of a cause without satisfying the legal demands of his attorney, by whose industry and expense these fruits were obtained."  In *Renick* v. *Ludington*, 16 W. Virginia, 378, 392, it is said: " The lien (even in cases of *quantum meruit*) is in the nature of an equitable lien, (3 Cooper's Tenn. Ch. 23,) and is based on the natural equity that the plaintiff ought not to be allowed to appropriate the whole of a judgment in his favor without paying thereout for the services of his attorney in obtaining such judgment."  See also *Mahone* v. *Southern Tel. Co.*, 33 Fed. Rep. 702, and *In re Paschal*, 10 Wall. 483.  We think, therefore, there was no impropriety in allowing intervenor three hundred dollars for these services.

The second item of intervenor's claim is this: The railroad company was not paying operating expenses and interest; it was running behind.  Certain parties interested in and officers of the road advanced moneys to continue its operation and prevent foreclosure proceedings.  After advancing a considerable sum, they became anxious to secure their advances, and upon the intervenor's advice they took assignments of pay-rolls, so as to bring them within the scope of the rulings of this court, as to preferential payment of employés, and on foreclosure these claims, thus evidenced and secured, were recognized and given equality of right with the security holders in the reorganization scheme.  One of the witnesses as to the value of these services testified that they were worth five thousand dollars, adding, " of course, I mean that such fees should be paid by the parties benefited."  That states the true equities of the case.  The parties who, acting under the intervenor's advice, took such steps as to secure their advances, and thereby obtained equality of interest with the lien holders, should pay him.  They who are compelled to let third parties into an equality with themselves in the matter

of security, ought not to be compelled to pay counsel who brought about such equality. As happily said by counsel for appellant : " This is taking the funds belonging to a prior mortgagee to pay counsel to devise a scheme by which the subsequent lender of money is preferred before him."

The remaining matter is this : The Louisville, Evansville and St. Louis Railway Company was a corporation made up by the consolidation of the Louisville, New Albany and St. Louis Railroad Company and the Evansville, Rockport and Eastern Railway Company. At the time of the consolidation there was on the first-named property a deed of trust of three millions of dollars, and on the latter one of nine hundred thousand dollars. After consolidation a new deed of trust for one million of dollars was executed on the entire property. Fearing that the trustee in the deed of trust on the Evansville, Rockport and Eastern Railway Company might take possession of that division, intervenor was employed to prevent such action, and he commenced suits to enjoin the trustee therefrom. He also successfully negotiated with the bondholders, and thus preserved the unity of operation and control until the commencement of the proceedings in this suit, whereby the entire property was taken possession of and operated by a single receiver, and subsequently sold and passed into the new corporation. At the sale both divisions were sold. The Evansville division being sold subject to the deed of trust of nine hundred thousand dollars, brought only twenty thousand dollars, to be applied on the second lien — the one given by the consolidated company.

The services thus rendered were at the instance of the railroad company ; and it is not perceived how services rendered at its instance to preserve control of that portion of its road not covered by the first lien, can be considered as services to the holders of bonds secured by that lien. The primary object of such services was the benefit of the railroad company. It was to enable it to retain the control and receive the earnings of as large an extent of the road as possible. As such services did not secure any additional interest to the lien holders — in fact, they advanced the moneys due for interest on the Evans-

ville first mortgage — it seems inequitable that they should be held responsible and be compelled to pay the party employed by the railroad company. It cannot be that security holders are liable, either in law or in equity, for the expenses incurred by their debtor in carrying into effect a scheme which the latter believes will enable it to pay its interest to them; but which, in fact, does not accomplish such result. It was the debtor's act; and if it failed of accomplishing hoped-for results, the party employed must look to his employer alone for compensation, and cannot charge the bondholders therefor, on the theory that it was believed that it might enure to their ultimate benefit. In this matter, also, the allowance to the intervenor as against the security holders, represented by the appellant, was unwarranted.

> *The decree, therefore, will be reversed, and the case remanded with instructions to allow the intervenor three hundred dollars. Costs in this court will be divided.*