## KLEINERT *v.* LEFKOWITZ.

1. BANKRUPTCY—AUTHORITY OF TRUSTEE—FRAUDULENT CONVEYANCES.

   The authority of a trustee in bankruptcy to pursue property obtained by bankrupt debtor and, with intent to defraud creditors, taken in the name of third persons, is no greater authority than that of other judgment creditors (Bankruptcy Act, § 70a, e).

2. SAME—TITLE PASSES TO TRUSTEE—EXEMPTIONS.

   Upon adjudication in bankruptcy and appointment of trustee, the trustee is vested with title of bankrupt to all of his property except insofar as exempt from execution (Bankruptcy Act, § 70a).

3. SAME—EXEMPTIONS—HOMESTEAD—TITLE.

   Homestead exemptions are governed by the law of the residence of the bankrupt and title to homestead does not pass to trustee (Bankruptcy Act, § 70a).

4. HOMESTEAD—NATURE OF EXEMPTION AT COMMON LAW.

   As respects rights of creditors at common law, a man's dwelling house and the land contiguous to it was inalienable and indefeasible except when required by the sovereign, or for the defense of the State.

5. SAME—LAND NOT SALABLE FOR DEBTS AT COMMON LAW.

   At common law, the creditor could not sell, or cause to be sold, his debtor's land to satisfy his debts.

6. SAME—CONSTITUTIONAL LAW—EQUITY.

   The constitutional homestead exemption was fixed by the people, does not depend upon principles of equity jurisprudence, and is to preserve the home for the family, even at the sacrifice of just demands of creditors (Const. 1908, art. 14).

7. FRAUDULENT CONVEYANCES—HOMESTEAD.

   A man's homestead is exempt from claims of all his creditors and there can be no fraudulent disposition of it (Const. 1908, art. 14).

8. SAME—ACQUISITION OF HOMESTEAD.

   It is not fraud to place either personal or real property which may be subject to execution out of reach of creditors by using

it to acquire a homestead or pay off liens thereon (Const. 1908, art. 14).

9. HOMESTEAD—FRAUDULENT CONVEYANCES—BANKRUPTCY.

Where fraudulent conveyance is made and set aside at the instance of assignee in bankruptcy, the husband or head of the family is not estopped to set up a right of homestead exemption therein (Const. 1908, art. 14).

10. SAME—DEFINITION OF HOME.

That is a man's home which, for the time at least, he does not contemplate changing, and which he expects to retain, unless some event not then in view may make it desirable or necessary to give it up.

11. SAME—ONLY ONE HOMESTEAD AT A TIME.

A person may not have two homesteads at the same time.

12. SAME—PROPERTY PURCHASED UNDER LAND CONTRACT.

A homestead may be claimed in property of which a party is in possession under a contract of purchase.

13. SAME—EQUITABLE INTEREST OF HUSBAND—TITLE IN WIFE.

Premises in which the husband has only an equitable interest may be protected as a homestead though the legal title to the premises is in the wife (Const. 1908, art. 14).

14. SAME—NATURE OF THE EXEMPTION.

The homestead exemption is not a mere privilege but an absolute right and holder is free to dispose of it regardless of his creditors.

15. BANKRUPTCY — JURISDICTION OF STATE COURTS — REMEDIES — HOMESTEAD.

A trustee in bankruptcy, who invokes jurisdiction of a State court to reach property allegedly belonging to bankrupt, has available such remedies as may be conferred by the laws of the State which confer homestead rights upon the bankrupt and his wife in real estate used and occupied as such (Bankruptcy Act, § 70e; Const. 1908, art. 14).

16. HOMESTEAD—CONSTITUTIONAL LAW—EVIDENCE OF SELECTION.

Occupancy by owner as a homestead is sufficient evidence of his election to treat it as such and no other or further notice of selection is necessary (Const. 1908, art. 14).

17. SAME—BANKRUPTCY—SELECTION BY TRUSTEE.

    In proceedings by trustee in bankruptcy, the bankrupt's home-stead may be selected, set off, or sold in the same cases and under the same circumstances as a sheriff armed with an execution from a State court might do, although no statutory method is prescribed for trustee (3 Comp. Laws 1929, §§ 14610, 14615).

18. SAME—BANKRUPTCY—FRAUDULENT CONVEYANCES.

    In suit in State court by trustee in bankruptcy against bankrupt and his wife to reach real estate used as their home and to which wife took title, decree holding property subject to home-stead rights *held*, correct, notwithstanding title was so taken for purpose of defrauding husband's creditors (Bankruptcy Act, § 70e; Const. 1908, art. 14).

Appeal from Wayne; Hunt (Ormond F.), J. Submitted January 15, 1935. (Docket No. 83, Calendar No. 38,163.) Decided April 8, 1935.

Bill by Walter Kleinert, trustee in bankruptcy, against Walter Lefkowitz and wife and First National Bank-Detroit, to set aside conveyances of certain property. From decree rendered, both parties appeal. Affirmed.

*J. P. Mikesell,* for plaintiff.

*Aldrich Baxter,* for defendants.

POTTER, C. J. June 21, 1928, Adeline Sterling, administratrix of the estate of Herman Sterling, deceased, recovered judgment in the circuit court for Wayne county against Walter Lefkowitz for $8,000. September 30, 1932, an execution was issued and on October 21, 1932, returned unsatisfied. November 9, 1932, Adeline Sterling, administratrix as aforesaid, took out a writ of garnishment against the First National Bank-Detroit which disclosed it had on hand $929.15 belonging to Mary Leszczewicz (the

same person as Mary Lefkowitz), and $2.24 belonging to Walter Lefkowitz. December 24, 1931, Mary Lefkowitz had obtained a deed of real estate from Barney Bernard and Helen Bernard, his wife; and in 1932, Mary Lefkowitz obtained title to a Ford sedan. It is claimed she also obtained title to the money on deposit in the bank, from her husband; that all this property was really the property of Walter Lefkowitz and belonged to him, and, therefore, belongs to his estate in bankruptcy.

November 29, 1932, Walter Lefkowitz was adjudicated a bankrupt in the United States district court for the eastern district of Michigan; December 27, 1932, was the first meeting of creditors; and December 29, 1932, the bill of complaint herein was filed by authority given to the trustee in bankruptcy.

In the bankruptcy proceedings, defendant Lefkowitz's assets were listed at $25 and his liabilities at $9,700. This bill is in the nature of a creditor's bill. Execution was issued upon the judgment obtained by Adeline Sterling, administratrix of the estate of Herman Sterling, deceased, which execution was returned unsatisfied.

A trustee in bankruptcy so far represents creditors of the bankrupt as to have the right to pursue property obtained by the bankrupt debtor and, with intent to defraud creditors, taken in the name of third persons. This is no greater authority than other judgment creditors have. *Harwood* v. *Underwood,* 28 Mich. 427.

Subdivision (e) of section 70 of the national bankruptcy act (11 USCA, § 110, p. 278) provides:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to

whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a *bona fide* holder for value. For the purpose of such recovery any court of bankruptcy as defined in this title, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction.''

Subdivision (a) of section 70 of the national bankruptcy act (11 USCA, § 110, p. 277) provides:

''The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except insofar as it is to property which is exempt.''

Under section 70 of the bankruptcy act, upon an adjudication in bankruptcy and the appointment of a trustee, such trustee is vested with the title of the bankrupt to all his property except insofar as such property may be exempt from execution. Homestead exemptions are governed by the law of the residence of the bankrupt and the title to homestead property does not pass to the trustee in bankruptcy. *Ingram* v. *Wilson,* 60 C. C. A. 618 (125 Fed. 913); *In re Bailey,* 176 Fed. 990; *In re Bitner* (C. C. A.), 255 Fed. 48.

The question of exemptions of personal and real property from sale under execution first challenged consideration in Michigan after the panic of 1837, during which, says Von Holst:

''The fancy values of landed property melted like snow in the April sun; immense quantities of commodities, stored up without any regard to the real

wants of the country, lost in a day fully one-third of their value; the figures on all kinds of value-paper became a bitterer mockery with every hour; bankruptcies came in avalanches; one manufactory after another stopped, and the number of those who could find neither bread nor work increased by thousands and tens of thousands." 2 Von Holst, Constitutional History of the United States, p. 195.

At that time there was no substantial exemption of personal property from execution sale in this State. The panic of 1837 so vividly described by Von Holst bore particularly hard upon the people of Michigan because of the disastrous effect of its wild-cat banking system, the failure to receive the cash on its $5,000,000 loan, and the cost of its internal improvement ventures which were not yet profitable. To extricate themselves from their situation, the legislature in 1842 passed Act No. 48, Laws of 1842, the first exemption law relating to personal property in this State worthy of the name.

Imprisonment for debt was abolished in Michigan by Act No. 48, Laws of 1839, and during the legislative session of 1839 the enactment of an appraisal law was strongly urged (Senate Documents 1839, pp. 406–413), but no action was taken by the legislature until the passage of Act No. 27, Laws of 1841, which was followed by Act No. 88, Laws of 1842, the first of which prohibited the execution sale of real estate unless the purchaser bid two-thirds of its appraised value, and the second of which compelled the creditor to accept the real estate levied upon at two-thirds its appraised value or have his execution discharged by the sheriff. Act No. 88, Laws of 1842, also included a mortgage moratorium. The governor submitted the reconsideration of the appraisal law to the legislature of 1844, and a majority and a minority report thereon, prepared by Norton R.

Ramsdell, of Ann Arbor, and Augustus C. Baldwin, of Milford (W. Norman McLeod, of Mackinaw City), respectively (Senate and House Documents of 1844, House Nos. 6 and 7), exhausted the arguments for and against the law. It was not then repealed, but in *Willard* v. *Longstreet,* 2 Doug. 172, was declared unconstitutional at the July, 1845, session of the Supreme Court.

At common law, a man's dwelling house and the land contiguous to it was inalienable and indefeasible except when required by the sovereign, or for the defense of the State. At common law, the creditor could not sell or cause to be sold his debtor's land to satisfy his debts. 3 Blackstone Commentaries (8th Ed.), p. 418. The first encroachments upon the exclusive right of the debtor to the use of his land was by the statute of Westminster 2 (13 Edw. I. c. 18), and it was not until 1 and 2 Vict. c. 110, that the creditor was permitted to make a sale of the debtor's lands to satisfy his debt. *Riggs* v. *Sterling,* 60 Mich. 643 (1 Am. St. Rep. 554).

After the Michigan appraisal laws of 1841 and 1842 had been declared unconstitutional, a homestead exemption bill was considered by the legislative session of 1847, and the homestead exemption law was created by Act No. 109, Laws of 1848. The provisions of the act of 1848 were in substance carried into the Constitution of 1850 and stand as article 16 thereof, and now constitute article 14 of the Constitution of 1908. When the provisions of article 16, Constitution of 1850, were before the convention for consideration, John D. Pierce, a member of the constitutional convention, said:

"The homestead should be free, inviolate. No man—no woman—no child—no family should be driven from home, because the hand of adversity

presses hard upon them. The measure is so accordant with the real spirit of progress, so just in itself, so wisely expedient in all exigencies to which families are liable, so alleviating when ill fortune bears them down, and so consonant with the popular sentiment and the principles of true Christian morality, that no power on earth can prevent its universal adoption, and they shall sit every man under his vine and fig tree. It is the high duty of the State to throw around every homestead, every fireside, every hearth-stone, the shield of its protection.'' Convention Debates 1850, p. 659.

Substantially similar sentiments were expressed by other members of the convention.

Very shortly after the adoption of the Constitution of 1850, the construction of the act of 1848 and of article 16 of the Constitution of 1850 came before the court, and were fully considered by it, in *Beecher* v. *Baldy*, 7 Mich. 488, in an exhaustive opinion by Mr. Justice CHRISTIANCY, the principles of which have not since been departed from.

The second Michigan Constitution was adopted in 1850. The object and purpose of the constitutional provision for a homestead exemption was to perpetuate the provisions of the homestead exemption law of 1848, to enable the debtor to establish and maintain a home exempt from sale under legal process sued out at the suit of any creditor, for himself and for his family. The constitutional homestead exemption was fixed by the people; does not depend upon principles of equity jurisprudence; and was to preserve the home for the family, even at the sacrifice of the just demands of creditors, for the reason the preservation of the home was regarded as of paramount importance. Senator Thomas H. Benton said:

"Tenantry is unfavorable to freedom. It lays the foundation for separate orders in society, annihilates the love of country, and weakens the spirit of independence. The tenant has, in fact, no country, no hearth, no domestic altar, no household god. The freeholder, on the contrary, is the natural supporter of free government, and it should be the policy of republics to multiply their freeholders, as it is the policy of monarchies to multiply their tenants." *McPhee* v. *O'Rourke,* 10 Col. 301 (15 Pac. 420, 3 Am. St. Rep. 579).

*Riggs* v. *Sterling, supra,* recognized that "tenantry is unfavorable to freedom and the independence of the people;" that the "ownership of the freehold is essential to the highest development of the citizen, secures the purest patriotism, and gives the best assurance of free government." It was there declared:

"That the homestead exemption was founded upon principles of the soundest policy,—those looking to the general welfare, as well as to that of the individual citizen; and the obvious intent of the act is to secure to every householder or head of a family a home,—a place of residence,—which he may improve and make comfortable, and where the family may be sheltered and live beyond the reach of those financial misfortunes which even the most prudent and sagacious cannot avoid. * * *

"It is not strange that courts whose duty it is to listen to the grievances of both debtor and creditor alike, and do justice to each, should not have failed to improve the first opportunity to look upon and construe with favor, liberally, in accordance with the equity and spirit of the law, the statutes and constitutional provisions by which the homes and homestead exemption are again restored to the citizen, after so many years of deprivation and destitution

have been endured by the unfortunate in every community.''

A man's homestead is exempt from the claims of all his creditors. As to his homestead, there can be no creditors, and there can be no fraudulent disposition of a homestead. Exemption laws operate alike in favor of the evil and the good, the just and the unjust. *Ferguson* v. *Little Rock Trust Co.*, 99 Ark. 45 (137 S. W. 555, Ann. Cas. 1913 A, 960).

It is not fraud to place property which may be on hand subject to execution out of reach of creditors by using it to acquire a homestead. *Finn* v. *Krut*, 13 Tex. Civ. App. 36 (34 S. W. 1013). Even if one disposes of his property subject to execution for the very purpose of converting its proceeds into exempt property in the nature of homestead, this does not constitute fraud. *Jacoby* v. *Parkland Distilling Co.*, 41 Minn. 227 (43 N. W. 52); *Backer* v. *Meyer*, 43 Fed. 702.

''An insolvent debtor may use with impunity any of his property that is free from the liens and the vested equitable interests of his creditors to purchase a homestead for himself and his family in his own name. If he takes property that is not exempt from judicial sale and applies it to this purpose, he merely avails himself of a plain provision of the Constitution or the statute enacted for the benefit of himself and his family.'' *First Nat'l Bank of Humboldt* v. *Glass*, 25 C. C. A. 151 (79 Fed. 706).

See, also, *Chase* v. *Swayne*, 88 Tex. 218 (30 S. W. 1049, 53 Am. St. Rep. 742).

''We know of no rule of law in this State that deprives a person, whose indebtedness may be equal to or exceeds his resources, from taking a part of his property to purchase a homestead. This is not a fraud upon creditors. It is not a concealment of

his property. He merely puts the property into a shape in which it will be the subject of beneficial provision for himself and his family, which the law recognizes and allows, and, such property having all the requisites of a homestead as to ownership, value, and occupancy, it will be held exempt from levy and sale on execution by his creditors.'' *Meigs* v. *Dibble,* 73 Mich. 101, 113.

''The acquisition of a homestead by a debtor, even though he applies the moneys arising from sales of goods or property, which of right belong to his creditors, to pay off liens on such homestead, will not invalidate such acquisition. * * *

''The exemption of the homestead from forced sale remains, notwithstanding that an insolvent has devoted moneys which equitably belong to all his creditors, to the payment of a debt which was a lien on the homestead.'' Smyth, Homestead and Exemptions, § 467.

Where a fraudulent conveyance is made and set aside at the instance of an assignee in bankruptcy, the husband or head of the family is not estopped to set up a right of homestead exemption therein. *Cox* v. *Wilder* (U. S. C. C.), 2 Dill. 45.

Even though the husband used a part of the personal property or money which he earned and which was subject to the claims of creditors to acquire a homestead used by himself and wife, he and she are entitled to a homestead therein. Smyth, Homestead and Exemptions, §§ 467–471.

''If the intention of the debtor when he occupies land as a homestead is not only to make it his present home, but also to prevent creditors from collecting their debts by subjecting the property thereto, the exemption may nevertheless be secured.'' 29 C. J. p. 802.

''That is a man's home which, for the time at least, he does not contemplate changing, and which

he expects to retain, unless some event not then in view may make it desirable or necessary to give it up." *Welch* v. *Whelpley,* 62 Mich. 15 (4 Am. St. Rep. 810).

A person may not have two homesteads at the same time. *Wheeler* v. *Smith,* 62 Mich. 373.

The Constitution and statutes of this State exempt as a homestead any quantity of land not exceeding 40 acres or, instead thereof, any lot in any city or village, and the dwelling house thereon and its appurtenances, owned and occupied by any resident of the State not exceeding in value $1,500.* A homestead may be claimed in property of which a party is in possession under a contract of purchase. *McKee* v. *Wilcox,* 11 Mich. 358 (83 Am. Dec. 743). Premises in which the husband has only an equitable interest may be protected as a homestead though the legal title to the premises is in the wife. *Orr* v. *Shraft,* 22 Mich. 260. Instances may be multiplied indefinitely where a special property has been held upon the proof of ownership to entitle its occupant to a homestead exemption. *Lozo* v. *Sutherland,* 38 Mich. 168.

Plaintiff claims the money which was used to buy the property in question belonged to the husband; that he bought the real estate used as a home by himself and wife and took the title thereto in her name with intent to defraud his creditors; and consequently he is not entitled to a homestead exemption therein.

The precise question has been passed upon, not only by this court, but elsewhere.

A similar question was before the court in *Orr* v. *Shraft, supra,* and the homestead exemption was

---

* Const. 1908, art. 14, § 2; 3 Comp. Laws 1929, § 14608.

held to attach. The homestead exemption is not a mere privilege, but an absolute right. *Dye* v. *Mann,* 10 Mich. 291; *McKee* v. *Wilcox, supra; Riggs* v. *Sterling, supra; Eagle* v. *Smylie,* 126 Mich. 612 (86 Am. St. Rep. 562). One may do what he pleases with exempt property, *Farrand* v. *Caton,* 69 Mich. 235, and creditors have no right to complain. *Anderson* v. *Odell,* 51 Mich. 492. The holder being as free to dispose of it as if he had not been indebted at all. *Rhead* v. *Hounson,* 46 Mich. 243.

In *Backer* v. *Meyer, supra,* where the precise question was involved, it is said:

"The plaintiff cannot subject this property to the payment of these judgments.

"The homestead of the defendants was purchased by Meyer after his insolvency in the name of his wife, but this fact does not make it any the less the family homestead. If Meyer had purchased the homestead in his own name, it would, under the Constitution and laws of this State, have been exempt, and the creditors were not therefore defrauded or prejudiced by the fact that it was purchased in the name of the wife."

In *Ferguson* v. *Little Rock Trust Co., supra,* it is said (quoting from syllabus):

"An insolvent debtor may exchange lots which are subject to the claims of his creditors, but upon which they have no liens, for a homestead which is not subject to their claims."

The text of the opinion sustains the principle announced in this syllabus.

It is claimed defendants' right to homestead may not be litigated in this court for the reason the bankruptcy court has exclusive jurisdiction to determine homestead exemptions.

The homestead exemption did not pass to the trustee in bankruptcy. Defendants could do with it what they pleased. Creditors were not defrauded by reason of any dealings therewith. By the terms of the bankruptcy statute the bankruptcy courts and the State courts have concurrent jurisdiction.* Homestead exemptions are governed by the law of the State. The exemption involved is not necessarily the exemption of the bankrupt, but involves the right of his wife to claim a homestead exemption. The trustee in bankruptcy authorized by the referee to institute this suit invoked the jurisdiction of the State court, and in the courts of the State he has available to him the remedies conferred by the laws of the State. Defendants are entitled to the homestead rights in the real estate used and occupied by them as such.

The essential features of a homestead as fixed and defined by the Constitution are analyzed and defined in *Beecher* v. *Baldy, supra.* There the court defined the obvious purpose of the selection of a homestead by the householder. The right to a homestead is a constitutional right existing against creditors in favor of rich and poor alike. *Riggs* v. *Sterling, supra.* The homestead may be a splendid mansion, a cabin or a tent. *Williams* v. *Dorris,* 31 Ark. 466. Occupancy by the owner is of itself evidence of an election by the owner of the parcel occupied to treat it as a homestead and no other or further notice of selection is necessary. *Beecher* v. *Baldy, supra; Thomas* v. *Dodge,* 8 Mich. 51; *Riggs* v. *Sterling, supra.* The statutes recognize these principles and prescribe the method of levy upon property containing a homestead, the selection of such homestead by the householder or the sheriff, setting it

---

* 11 USCA, § 70e.

aside, the sale of the balance, and the proceedings when the property cannot be divided and exceeds in value the sum of $1,500. 3 Comp. Laws 1929, §§ 14610, 14615.

There is no statutory method prescribed for analogous proceedings on the part of a trustee in bankruptcy. The practice has been to permit the trustee in bankruptcy, an officer of the bankruptcy court, to have the homestead selected, set off, or sold in the same cases and under the same circumstances the sheriff armed with an execution from a State court might do, the trustee in bankruptcy acting under the authority of the superior jurisdiction of the bankruptcy law but in such a way as to fully protect the homestead rights of the householder secured to him by the Constitution and laws of the State, recognized and enforced by the national bankruptcy act.

The trial court came to a correct conclusion. The decree of the trial court is affirmed, but without costs.

NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.