**Lenni C. RUBEL, Plaintiff–Appellant,**

v.

**BRIMACOMBE & SCHLECTE, P.C., Defendant–Appellee.**

**Civ. A. No. 87–73810.**

United States District Court, E.D. Michigan, S.D.

April 29, 1988.

---

Thomas K. Ellis, Napoleon, Mich., for plaintiff-appellant.

Peter A. Jackson, Detroit, Mich., for defendant-appellee.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff-appellant appeals a judgment of the Bankruptcy Court for the Eastern District of Michigan dated September 10, 1987. I have jurisdiction pursuant to 28 U.S.C. § 158(a).

The issue in this case is whether an attorney's lien for fees can attach to real property.

Appellant retained appellee law firm to represent her in an action for divorce, but discharged them before the judgment of divorce was final. Appellant retained another lawyer to prosecute her action. Appellee prepared a stipulation and order of substitution of counsel, signed December 9, 1980 by appellee and appellant's new counsel, in which appellee placed a provision granting themselves a lien against trial or settlement proceeds to secure their fees. The state circuit court judge entered it as an order on December 12, 1980. Appellant's unrebutted testimony is that she had no knowledge of the stipulation or its contents.

The divorce action was settled without trial. A judgment of divorce was entered on December 12, 1980; it provided *inter alia* that appellant receive the marital home.

Appellee filed a "notice of claim of interest" in the home with the county register of deeds in March 1981. The notice states

that "said interest is a claim pursuant to an order ... in which Brimacombe & Schlecte was granted a lien on a secured property to secure payment of his fee."

In 1983 appellant secured further financing by adding further debt to an existing mortgage on the home. Interestingly, a title search did not disclose appellee's claimed lien.

Appellant paid approximately $2,000 on her account for fees with appellee. Appellee claims that the total fee bill was approximately $11,000, and that appellant now owes $9,000.

It appears that appellee began foreclosure proceedings against appellant's home. But during Chapter 7 Bankruptcy proceedings, appellant filed a "complaint to discharge a judicial lien." Trial on the complaint was held September 10, 1987.

Appellant claimed that the lien was dischargeable either as a judicial lien, pursuant to 11 U.S.C. § 522(f), or because the fees were excessive. Relying upon *Aetna Casualty & Surety Company v. Starkey*, 116 Mich.App. 640, 323 N.W.2d 325 (1982), the bankruptcy court held that the lien was not a judicial lien but a common law lien, and thus not dischargeable. The bankruptcy court held that the order of substitution was of no legal significance. Finding that there were contested matters in the divorce action, including support for appellant's retarded child, the bankruptcy court also held that the fees were reasonable.

■ On appeal appellant argues that as a matter of law an attorney's lien for fees[1] cannot attach to real property. Ap-

pellee asserts that this issue was not raised before the bankruptcy court and I may not consider it, and alternatively that an attorney's charging lien can attach to real property.

■ Appellee's claim that I cannot consider this issue because it was not raised below is without merit. As an appellate court I review the conclusions of law upon which the bankruptcy court's judgment is based under the *de novo* standard. *Borg–Warner Acceptance Corp. v. Fedders Financial Corp. (In re Hammons)*, 614 F.2d 399, 403 (5th Cir.1980); *First Nat'l Bank of Lincolnwood v. Levine (In re Evanston Motor Co., Inc.)*, 735 F.2d 1029, 1030–31 (7th Cir.1984); *First Bank of Colorado Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir.1987). As the bankruptcy court's judgment granted appellee a lien on appellant's home, I may consider whether an attorney's charging lien may attach to real property.

■ Appellant correctly urges that at common law an attorney's charging lien cannot attach to real property, even when the attorney's services result in a judgment establishing title or possession for the client.[2] *E.g., Sandler, P.A. v. Beck (In re Fidelity Standard Mortgage Corp.)*, 43 B.R. 654, 656 (S.D.Fla.1984); *Billingham v. Thiele*, 107 So.2d 238, 238–44 (Fla.Ct. App.1958), *aff'd* 109 So.2d 763 (Fla.1959); *Tuggle v. Williamson*, 450 So.2d 93 (Miss. 1984); *Ashman v. Shecter*, 76 A.2d 139, 143 (Md.Ct.App.1950) (and cases cited therein); *see generally* Annot., *Attorney's*

1. There are two types of attorney's liens: possessory and non-possessory. The possessory or retaining lien is the attorney's right in certain circumstances to retain papers, moneys, securities, and property received from or recovered for his client to compel the payment of legal fees to the attorney. *See generally* Note, *Attorney's Retaining Leins Over Former Client's Paper*, 65 Colum.L.Rev. 296 (1965). The non-possessory lien, called a charging, equitable, or general lien, is a lien upon the judgment recovered by the attorney. Restatement of Security § 62 comment j (1941); *see generally* Law.Man.Prof. Conduct (ABA/BNA) 41:2101 (Oct. 17, 1984); Note, *Attorney vs. Client: Lien Rights and Remedies in Tennessee*, 7 Mem.St.U.L.Rev. 435 (1977). The lien, unless governed by statute, is equitable

in nature and governed by equitable principles. *Northern Pueblos Enterprises v. Montgomery*, 644 P.2d 1036, 1038 (N.M.1982); Law.Man.Prof. Conduct (ABA/BNA) 41:2101, 2102 (Oct. 17, 1984); *see Louisville, Evansville and St. Louis R.R. Co. v. Wilson*, 138 U.S. 501, 507, 11 S.Ct. 405, 407–08, 34 L.Ed. 1023 (1890). Following general usage, I will call the non-possessory lien a charging lien.

2. The only case correctly cited by appellee to the contrary, *Webster v. Sweet*, 65 F.2d 109 (5th Cir.1933), to the extent that it contradicts the clear common law rule, is in error. As *Webster* correctly notes, the federal courts must follow state law regarding attorney's liens.

*Lien On Property Recovered for his Client,* 93 A.L.R. 667 (1934). As the court in *Sandler* stated:

[I]n the absence of statutory authority or express contract or implied agreement arising out of special equitable circumstances, an attorney is not entitled to the imposition of a charging lien on the real estate of his client, even if he has successfully prosecuted a suit to establish a client's title or recover title or possession for the client.

*Sandler,* 43 B.R. at 656.

The courts of Michigan have not ruled directly on the issue of whether an attorney's charging lien may attach to real property. However, under the general principles governing equitable liens I conclude that in Michigan courts would follow the majority rule disallowing attorney's liens on real property unless there is an express contract between the parties or special equitable circumstances exist.[3]

■ Under principles governing equitable liens, courts in Michigan generally require an agreement in writing to impose a lien upon real property. In the absence of a written agreement, the court may impose a lien upon real property based upon the relation of the parties, under equitable principles. *Schrot v. Garnett,* 370 Mich. 161, 163–64, 121 N.W.2d 722, 723 (1963); *Cheff v. Haan,* 269 Mich. 593, 598, 257 N.W. 894, 896–97 (1934); *Kelly v. Kelly,* 54 Mich. 30, 47, 19 N.W. 580, 588 (1884); *Warren Tool Co. v. Stephenson,* 11 Mich.App. 274, 281, 161 N.W.2d 133, 138–39 (1968).

These principles are in accord with the common law rule regarding attorney's charging liens.

Here there is no written agreement between the parties granting appellee a lien.[4] Thus, if there is a lien, it must arise out of the equities of this case.

The competing equities are those of appellee attorneys and appellant client. In appellee's favor is the court's concern that an attorney be compensated for his services. The attorney's lien is a creation of law to protect attorneys against dishonest clients who attempt to evade paying for an attorney's services after benefitting from them. *Louisville, Evansville and St. Louis R.R. Co. v. Wilson,* 138 U.S. 501, 507, 11 S.Ct. 405, 407–08, 34 L.Ed. 1023 (1890); *Northern Pueblos Enterprises v. Montgomery,* 644 P.2d 1036, 1038 (N.M. 1982).

On the other side are the equities weighing in favor of appellant. The American Bar Association has provided guidelines for attorneys in considering whether to invoke an attorney's retaining lien. American Bar Association Standing Committee on Ethics and Professional Responsibility, Informal Opinion 1461 (1980). I find this opinion to be both applicable to a charging lien as well and highly persuasive in my consideration of the equities in this case.

The ethical code specifically provides for attorney's liens. Thus, an attorney's lien is consistent with an attorney's ethical obligations. Model Code of Professional Responsibility DR 5–103(A)(1) and EC 5–7; Model Rules of Professional Conduct Rule 1.8(j)(1); *Lucky–Goldstar Int'l (Am.), Inc. v. International Mfg. Sales Co., Inc.,* 636 F.Supp. 1059, 1062 n. 6 (N.D.Ill.1986).

However, the "mere existence of the right does not entitle a lawyer to stand upon that right if ethical considerations

---

**3.** The Michigan Court of Appeals held in *Aetna Casualty,* 116 Mich.App. at 644, 323 N.W.2d at 328, that the attorney had an attorney's lien upon the funds recovered for his client "[o]n the basis of the general principles of law concerning attorneys' charging liens...." *Cf. Warren Tool Co. v. Stephenson,* 11 Mich.App. 274, 284 n. 5, 161 N.W.2d 133, 140 n. 5 (1968), where the court distinguished equitable attorney's liens from attorney's charging liens, stating that "Charging and retaining liens arise by reason of the lawyer-client relationship independently of express agreement, while, in the cited cases, the

equitable lien was dependent on a finding of express agreement."

**4.** Since the common law rule disallows attorney's charging liens attaching to real property, appellee's purported agreement, the stipulation, would have to be much clearer to derogate from the clear rule. The stipulation merely grants appellee a lien on "trial or settlement proceeds." For this to contravene the rule it would need to be much more explicit. In addition, appellant has testified that she did not know of the stipulation nor its contents.

require that he forego it." Informal Opinion 1461. Thus, EC 2–23 exhorts lawyers to forego a legal right to "sue a client unless necessary to prevent fraud or gross imposition by the client." This same standard, the opinion states, should be applied in determining whether to exercise an attorney's retaining lien. Informal Opinion 1461; *Lucky–Goldstar*, 636 F.Supp. at 1063. The fraud or gross imposition standard is in accord with the prior case law allowing an attorney's charging lien to attach to real property only under special equitable circumstances.

The opinion specifies seven factors to be considered in applying the fraud or gross imposition standard: (1) the client's financial situation; (2) the client's sophistication in dealing with lawyers; (3) the reasonableness of the fee; (4) whether the client clearly understood and agreed to pay the amount now owing; (5) whether imposing the lien would prejudice important rights of the client or others; (6) whether failure to impose the lien would result in fraud or gross imposition by the client; and (7) whether there are less stringent means by which the matter can be resolved or the amounts owing secured. Informal Opinion 1461; *Lucky–Goldstar*, 636 F.Supp. at 1063.

Here, the applicable factors weigh against the lien. First, the client's financial situation: appellant's financial condition should cause appellee to forego the lien. *Lucky–Goldstar*, 636 F.Supp. at 1064. Appellant undertook bankruptcy proceedings because she had financial difficulties. Appellant has also incurred additional debt secured by her home. After appellant increased this debt, it appeared that the equity in the home was less than the amount of fees claimed by appellees. Second, the client's sophistication in dealing with lawyers: there is no evidence that appellant is sophisticated in dealing with lawyers. Third, the reasonableness of the fees: the bankruptcy court found that the fees were reasonable. The record is totally inadequate for me to conclude that this finding is clearly erroneous. Fourth, whether the client clearly understood and agreed to pay the amount now owing: ap-

pellee was retained on an hourly basis, and informed appellant that the total bill depended both on the complexity of the case and on the other side's actions. While appellant apparently knew these terms, there is evidence that she was quite surprised at the total bill. This could be due in part to appellant's lack of sophistication in dealing with lawyers. Additionally, while a client may know the terms of an hourly retainer agreement, until it is brought home to the client how many hours the attorney has worked, and the number of hours he reasonably expects are necessary (always subject, of course, to the two caveats of complexity and the adversary), it cannot be said that the client "clearly understood and agreed to pay the amount now owing." Here appellant testified that she expressed concern at the amount of her legal fees, and after receiving a bill for over $8,000 (and because of disagreements over the conduct of her action for divorce), terminated her relationship with appellee. The fifth factor is not applicable. Sixth, whether failure to impose the lien would result in fraud or gross imposition by the client: I do not find that failure to impose this lien would result in a fraud or a gross imposition by appellant on appellee. Appellant's financial condition strongly suggests that she is not attempting to defraud appellee. This conclusion is strengthened by appellant's willingness to make partial payments on her account, which refutes any suggestion of fraud or gross imposition. *See Lucky–Goldstar*, 636 F.Supp. at 1064. Seventh, whether there are less stringent means by which the matter can be resolved or the amounts owing secured: the record does not contain any indication that appellee sought to resolve the dispute by other means. Appellee also had alternatives to asserting the lien, such as an action for quantum meruit, for resolution of this dispute.

Furthermore, I hold that the protection afforded a family home, as evidenced in the common law rule protecting a person's land

from seizure or forced sale by creditors and in the homestead exemption and allowance, is implicated in this case. Generally at common law a creditor cannot force a person to sell his/her land to satisfy debts. *Kleinert v. Lefkowitz*, 271 Mich. 79, 85, 259 N.W. 871, 873 (1935); 3 W. Blackstone, *Commentaries* *418–21; A. Simpson, *A History of the Common Law of Contract* 587–91 (1975). This common law principle is reflected in the protection given families in their homes by the homestead exemption and allowance.[5] *See In re Davis*, 329 F.Supp. 1067, 1069–71 (E.D.Mich.1971); *Stanton v. Hitchcock*, 64 Mich. 316, 319, 31 N.W. 395, 395 (1887); *Riggs v. Sterling*, 60 Mich. 643, 647–48, 27 N.W. 705, 707–09 (1886).

The homestead exemption expresses a strong societal policy favoring the preservation of the home over even the just demands of creditors. As the Michigan Supreme Court stated:

> The constitutional homestead exemption ... was to preserve the home for the family, even at the sacrifice of the just demands of creditors, for the reason the preservation of the home was regarded as of paramount importance.

*Kleinert*, 271 Mich. at 86, 259 N.W. at 873. And soon after the Michigan Supreme Court reaffirmed this principle, stating:

> Homesteads are especially exempted by statute from forced sale on execution. While, of course, such exemption is based upon Const. 1908, art. 14, § 2, that very fact shows an enunciation by the people of the State of a clearly defined public policy.
>
> "The law which gives the homestead right is to be liberally construed and favorably regarded. Courts of equity look with favor upon the benefits sought to be accomplished by this statute.
>
> "The welfare of the family, the community, and the State are all alike interested in the maintenance of the family and the home."

*Miller v. Detroit Savings Bank*, 289 Mich. 494, 497, 286 N.W. 803, 804 (1939) (citations omitted); *accord Riggs*, 60 Mich. at 648–49, 27 N.W. at 708–09.

Although I am not dealing with the homestead exemption or allowance, in considering the equities of this case I cannot ignore this principle "of paramount importance." Appellant—now divorced, having gone through bankruptcy, charged with the responsibility of caring for a retarded child —seeks to retain what equity she has in her home free from this lien. The strong policy favoring the protection of the home weighs heavily against imposing appellee's lien in this case.

Considering the equities of this case I do not find special equitable circumstances which justify imposing this lien on appellant's home. Under applicable law, appellee's asserted charging lien in appellant's home is not valid.

Accordingly, I reverse the judgment of the bankruptcy court declaring appellee's charging lien in appellant's home valid.

IT IS SO ORDERED.

---

5. *E.g.,* the homestead exemption in Mich. Const. of 1963, art. X, § 3; and the homestead allowance in M.C.L.A. § 700.285 (*cf. Unif. Probate Code* § 2–401, 8 U.L.A. 94 (1983).